**F I L E D**
**United States Court of Appeals**
**Tenth Circuit**

**APR 1 2003**

**PATRICK FISHER**
**Clerk**

**PUBLISH**

**UNITED STATES COURT OF APPEALS**

**TENTH CIRCUIT**

---

ANDREW MATTIODA,

        Plaintiff-Appellant,

v.

THOMAS E. WHITE, Secretary,
Department of the Army,

        Defendant-Appellee.

No. 01-5171

---

Appeal from the United States District Court
for the Northern District of Oklahoma
(D.C. No. 00-CV-772-E)

---

Steven M. Angel, Angel & Associates, LLC, Oklahoma City, Oklahoma, for
Plaintiff-Appellant.

Wyn Dee Baker, Assistant United States Attorney, (David E. O'Meilia, United
States Attorney, with her on the brief), for Defendant-Appellee.

---

Before **SEYMOUR**, **McKAY**, and **MURPHY**, Circuit Judges.

---

**MURPHY**, Circuit Judge.

Plaintiff Andrew Mattioda ("Mattioda") sued Defendant Thomas E. White, Secretary of the Department of the Army (the "Army") alleging retaliation and racial discrimination in violation of Title VII of the Civil Rights Act of 1964 ("Title VII"), 42 U.S.C. §§ 2000e-3, 2000e-16. The district court granted summary judgment in favor of the Army. In granting the motion, the court concluded that Mattioda failed to establish a prima facie case of racial discrimination, failed to demonstrate that the Army's proffered explanation was a pretext for racial discrimination, and failed to establish a prima facie case of retaliation. Exercising jurisdiction pursuant to 28 U.S.C. § 1291, this court **affirms**, rejecting Mattioda's assertion that *Oncale v. Sundowner Offshore Services, Inc.*, 523 U.S. 75 (1998), and *Reeves v. Sanderson Plumbing Products, Inc.*, 530 U.S. 133 (2000), overruled this court's decision in *Notari v. Denver Water Department*, 971 F.2d 585 (10th Cir. 1992), which establishes the elements of a Title VII reverse racial discrimination claim.

I.      BACKGROUND

Mattioda is a white male who was employed by the Army in the Engineering & Construction Division, United States Army Engineer District, in Tulsa, Oklahoma ("Tulsa district"), as a temporary chemist beginning September 5, 1995. On January 19, 1997, his status was converted from a temporary position to a one-year term appointment. The term appointment was later extended for one

-2-

year and was scheduled to expire on February 18, 1999. At the time, the Tulsa district had two term chemist positions.

In March 1998, Mattioda was informed that a co-worker, Cliff Murray ("Murray"), had reported to his supervisor that Mattioda's actions toward him were bordering on harassment. As a result, Mattioda was removed from projects managed by Murray.

During March and April 1998, management began discussions concerning Investigative Technology Advocate ("ITA") functions and Site Characterization and Analysis Penetrometer System ("SCAPS") activities. At this time, Mattioda was informed that his involvement in Army projects was uncertain.

On June 23, 1998, Mattioda filed an informal complaint alleging that he was suffering from stress and that he was prevented from maintaining current job responsibilities and from attending a SCAPS meeting. He requested that the Equal Employment Opportunity ("EEO") office mediate a resolution to his problems with Murray. On June 26, 1998, Mattioda, an EEO counselor, and Mattioda's supervisor, Rex Ostrander, met to discuss Mattioda's concerns. During the meeting, the participants concluded that Mattioda's case did not appear to be an EEO complaint. Mattioda stated that he considered the complaint to be "more of a grievance."

That summer, management began to question whether the Tulsa district could sustain the two term chemist positions, although Mattioda was informed by his supervisor that there would be sufficient workload to extend the term appointments of both chemists. Subsequently, on October 16, 1998, Mattioda was given a memorandum which informed him that his ITA responsibilities would be transferred to other individuals. In the memorandum, management also recommended that Mattioda's conduct be reviewed prior to a decision on the possible extension of his term appointment.

On October 23, 1998, Mattioda initiated an informal complaint with the EEO office, alleging that management diverted work from him in retaliation for filing the informal complaint in June 1998. Four days later, the division chief, Ralph Hight ("Hight"), confirmed that Mattioda should not be involved in ITA functions and SCAPS activities because of his term employment. Hight also mentioned that "workload had fallen off."

In late November or early December, the branch chief, Paul Erdner ("Erdner"), conducted an annual workload analysis to measure the percentage of time each of the five chemists spent on actual chemistry work. As part of the analysis, Erdner documented that only four chemists were needed and recommended Greg Williams ("Williams"), the other term-appointment chemist, be retained. On January 6, 1999, the results of the workload analysis were

published. The results confirmed that only one term chemist was necessary and that Mattioda would be recommended for termination.

On December 28, 1998, Mattioda filed a formal EEO complaint, alleging that the reduction in job responsibilities was the result of gender and disability discrimination, reprisal, and sexual harassment. On January 11, 1999, Mattioda was formally notified that his term appointment would not be extended. He then filed an informal complaint with the EEO office on January 20, 1999. He filed a formal complaint on February 17, 1999, alleging that the Army's decision not to renew his appointment was unlawfully based on race, disability, and sex. Prior to the formal complaint, Mattioda sought an extension of his term appointment in order to transfer to another district. Erdner was informed by human resources that Mattioda's appointment could not be extended because of "lack of work." Mattioda declined an offer for a thirty-day extension in exchange for dropping his EEO complaint.

II. DISCUSSION

This court reviews the district court's grant of summary judgment *de novo*. *Reynolds v. Sch. Dist. No. 1*, 69 F.3d 1523, 1531 (10th Cir. 1995). Summary judgment is appropriate if "there is no genuine issue as to any material fact" and "the moving party is entitled to a judgment as a matter of law." Fed. R. Civ. P. 56(c). This court examines the record and draws "reasonable inferences

therefrom in the light most favorable to the party opposing summary judgment." *Reynolds*, 69 F.3d at 1531. To survive summary judgment, there must be sufficient evidence in favor of an opposing party to support a jury verdict. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 249 (1986).

A.     Reverse Racial Discrimination[1]

Title VII prohibits race discrimination in actions affecting federal employees. 42 U.S.C. § 2000e-16. To proceed on a claim of reverse racial discrimination, a plaintiff can rely on the burden-shifting analysis as set forth in *McDonnell Douglas Corp. v. Green*, 411 U.S. 792 (1973). *Reynolds*, 69 F.3d at 1533. Under such analysis, a plaintiff must first establish a prima facie case of discrimination. *Notari*, 971 F.2d at 588. If a plaintiff establishes a prima facie case, the burden shifts to the defendant to provide a legitimate, non-discriminatory reason for the employment action. *Id.* If the defendant satisfies its burden, the plaintiff must then demonstrate that the legitimate reasons are merely a pretext for racial discrimination. *Id.*

The district court ruled that Mattioda failed to offer evidence that supported a prima facie case of discrimination under the *McDonnell Douglas* framework.[2]

---

[1]Mattioda did not allege gender or disability discrimination in his complaint filed in the district court on September 6, 2000.

[2]The district court also determined that Mattioda did not produce sufficient evidence to satisfy the alternative method for proceeding on a reverse racial discrimination claim. *See Notari v. Denver Water Dep't*, 971 F.2d 585, 590 (10th

In addition, the court concluded that even if Mattioda successfully presented a prima facie case, he failed to satisfy his burden of showing pretext.

Mattioda argues that in order to establish a prima facie case under the *McDonnell Douglas* burden-shifting framework, he need only show that, as a white plaintiff: (1) he was a member of a protected group; (2) he was qualified for his position; (3) he was terminated; and (4) a non-white employee holding the same job was retained. In a traditional race discrimination case involving a plaintiff who is a member of a minority group, the plaintiff can satisfy the first element of the prima facie burden by demonstrating that he belongs to a minority group. *See Reynolds*, 69 F.3d at 1534. In *Notari*, this court held that in cases of reverse racial discrimination, instead of showing minority group membership, a plaintiff must "establish background circumstances that support an inference that the defendant is one of those unusual employers who discriminates against the majority." 971 F.2d at 589. In modifying the first prima facie requirement, this court recognized that members of the majority group are not necessarily entitled to a presumption of discrimination afforded to members of a minority group. *Id.*; *Reynolds*, 69 F.3d at 1534.

---

Cir. 1992). On appeal, Mattioda does not challenge the district court's conclusion. This court, therefore, will not consider whether Mattioda failed to satisfy the alternative method. *See State Farm Fire & Cas. Co. v. Mhoon*, 31 F.3d 979, 984 n.7 (10th Cir. 1994) (noting that failure to raise issue on appeal in the opening brief is a waiver of that issue).

Mattioda contends that *Notari* is no longer viable in light of Supreme Court decisions in *Oncale* and *Reeves*. This court, however, concludes that his arguments are unavailing.

Mattioda misconstrues the holding in *Oncale* as conflicting with *Notari*. In *Oncale*, the Supreme Court confirmed that there can be no "conclusive presumption that an employer will not discriminate against members of his own race." 523 U.S. at 78. In other words, plaintiffs alleging same-group discrimination are not precluded from receiving Title VII protection. *See id.* This court has similarly recognized that Title VII prohibits discrimination against members of a majority group. *McGarry v. Bd. of County Comm'rs*, 175 F.3d 1193, 1199 (10th Cir. 1999). *Oncale*, however, does not prohibit applying a different burden on members of the majority group in order to raise an inference of discrimination. In *Notari*, this court did not establish a conclusive presumption against discrimination of the majority, as alleged by Mattioda, but merely recognized that discrimination against the majority is less frequent than discrimination against a member of a minority group. *Notari*, 971 F.2d at 589-90. Because instances of reverse discrimination are less common, this court modified the requirements of a prima facie case to reflect a plaintiff's membership in a historically favored group. *See id.* at 589. In either case, however, any plaintiff

benefits from an inference of discrimination once the prima facie elements are satisfied. *Id.*

Further, while *Reeves* required a plaintiff to show membership in a "protected class" to establish a prima facie case of discrimination, such a requirement does not eliminate the requirement set forth in *Notari* that a plaintiff show background circumstances to establish a prima facie case of reverse racial discrimination. In *Reeves*, the Supreme Court applied the *McDonnell Douglas* framework to a claim brought under the Age Discrimination in Employment Act of 1967 ("ADEA"), 29 U.S.C. §§ 621-634.[3] *Reeves*, 530 U.S. at 142. In applying the framework, the Court established the first element of a prima facie case in an age discrimination case to be "a member of the class protected by the ADEA." *Id.* Mattioda would have this court conclude that the reference in *Reeves* to "protected class" membership is a statement by the Court that a plaintiff need only demonstrate that he is a member of a group protected by Title VII, which include whites, to meet his prima facie burden. The Court's statement in *Reeves*, however, has no application within the context of a reverse racial discrimination claim brought under Title VII because the "protected class" referenced in *Reeves*

_____

[3]The Supreme Court did not specifically hold that the *McDonnell Douglas* framework applies to ADEA claims, but merely applied the framework because the parties did not dispute its application. *Reeves v. Sanderson Plumbing Products, Inc.*, 530 U.S. 133, 142 (2000).

-9-

is restricted by the ADEA to individuals who are at least 40 years of age. *O'Connor v. Consol. Coin Caterers Corp.*, 517 U.S. 308, 312 (1996) (noting that the protected class under the ADEA is limited). *Reeves*, therefore, does not affect this court's application of the modified prima facie burden in cases of reverse racial discrimination under Title VII. Thus, *Notari* continues to operate as Tenth Circuit precedent and, under *Notari*, Mattioda must demonstrate background circumstances that support an inference of the Army's discrimination against whites if he proceeds under the *McDonnell Douglas* framework.

On appeal, Mattioda merely argues that *Notari* should be reversed. He does not assert that, should this court reaffirm *Notari*, he has satisfied any of the requirements for establishing a prima facie case of reverse racial discrimination. Mattioda, therefore, has failed to demonstrate a prima facie case of reverse racial discrimination under the *McDonnell Douglas* framework. The district court properly granted summary judgment in favor of the Army.

B.    Retaliation

Mattioda claims that his job responsibilities were reduced in retaliation for his EEO activity and that the workload analysis which resulted in his term appointment not being extended was conducted in retaliation for his formal EEO complaint. A claim of retaliation under Title VII requires application of the *McDonnell Douglas* burden-shifting analysis. *McGarry*, 175 F.3d at 1201. The

prima facie case for retaliation requires proof that: (1) the plaintiff engaged in protected opposition or participated in a Title VII proceeding; (2) the employer acted adversely subsequent to or contemporaneous with employee activity; and (3) there is causal connection between plaintiff's activity and the employer's action. *Love v. Re/Max of America, Inc.*, 738 F.2d 383, 385 (10th Cir. 1984).

The district court determined that Mattioda failed to establish a prima facie case of retaliation because he did not complain of any activity that was protected by Title VII. After review of the record, this court concludes that, even if Mattioda established a prima facie case of retaliation, he has failed to show that the reassignments and his non-renewal were based on pretext.

Because the Army offered the legitimate, nondiscriminatory reason of an insufficient workload to justify his non-renewal, Mattioda must show that the conclusions from the workload analysis were pretext for retaliation. *See McGarry*, 175 F.3d at 1201-02. Mattioda claims that because the workload analysis was conducted only after he initiated his EEO complaint, it was pretext for discrimination. The record, however, does not support his claim of pretext. In the summer of 1998 and prior to any EEO complaint, management became concerned whether two term chemist positions could be sustained. A workload analysis had been conducted every year and, in 1998, was completed prior to Mattioda's formal EEO complaint and subsequent non-renewal. Even before the

1998 analysis, management knew that the workload had been decreasing. Furthermore, the decision not to renew Mattioda's term appointment was based in part on studies conducted over the last two years prior to his non-renewal, indicating that the Army could not sustain the number of chemists employed in the district. As a result, his non-renewal was based on legitimate determinations and Mattioda has failed to identify specific evidence that would suggest retaliation. Accordingly, Mattioda has not established a claim for retaliation under the *McDonnell Douglas* framework. The district court, therefore, properly granted summary judgment in favor of the Army.

III.    CONCLUSION

Mattioda has failed to establish a prima facie case of reverse racial discrimination. Moreover, Mattioda has not presented any evidence that his non-renewal was a pretext for retaliation in response to filing EEO complaints. Accordingly, the district court's grant of summary judgment in favor of the Army is **AFFIRMED**.