**F I L E D**
**United States Court of Appeals**
**Tenth Circuit**

**FEB 3 2005**

**PATRICK FISHER**
**Clerk**

UNITED STATES COURT OF APPEALS

FOR THE TENTH CIRCUIT

---

ROBERT H. SPRAGUE,

      Plaintiff-Appellant,

v.

ADVENTURES, INC., an Oklahoma
corporation doing business as Carpet
City,

      Defendant-Appellee.

No. 03-5019
(D.C. No. 01-CV-268-H)
(N.D. Okla.)

---

ORDER AND JUDGMENT  *

---

Before **TYMKOVICH** , **HOLLOWAY** , and **ANDERSON** , Circuit Judges.

After examining the briefs and appellate record, this panel has determined

unanimously that oral argument would not materially assist the determination

of this appeal. *See* Fed. R. App. P. 34(a)(2); 10th Cir. R. 34.1(G). The case is

therefore ordered submitted without oral argument.

---

* This order and judgment is not binding precedent, except under the doctrines of
law of the case, res judicata, and collateral estoppel. The court generally
disfavors the citation of orders and judgments; nevertheless, an order and
judgment may be cited under the terms and conditions of 10th Cir. R. 36.3.

Plaintiff Robert H. Sprague appeals from a district court order granting summary judgment in favor of defendant Adventures, Inc. on his claims of religious discrimination, and retaliation under Title VII. Plaintiff worked as a carpet salesman for defendant. He alleges that he was subjected to religious harassment by a supervisor and then transferred from the store where the supervisor worked to another location because of his conflict with the supervisor.[1] The district court rejected this discriminatory/retaliatory transfer claim because plaintiff failed to offer evidence to rebut defendant's explanation that he was transferred because of poor sales performance. On de novo review, *Pastran v. K-Mart Corp.*, 210 F.3d 1201, 1204 (10th Cir. 2000), we affirm that ruling.

The district court rejected plaintiff's hostile work environment claim for two reasons, holding (a) that the alleged harassment—religious pressure imposed by one Christian on another Christian—was not intentional discrimination because of religion cognizable under Title VII and, (b) that, in any event, it was not severe enough to be actionable. We need not rely on the first reason, as we agree with

---

[1]    Plaintiff refers to his transfer as a demotion, because the second location was allegedly a much harder place to earn sales commissions. While equating a transfer with a demotion is oversimple, we have held that Title VII is broad enough to reach a "decision causing a significant change in benefits." *Stinnett v. Safeway, Inc.*, 337 F.3d 1213, 1217 (10th Cir. 2003). Given our disposition of the transfer claim based on another legal deficiency, we need not resolve whether the mere change of location here satisfied the condition stated in *Stinnett*.

-2-

the second and it is dispositive. In sum, we affirm the entry of summary judgment for defendant.

As this is an appeal from the entry of summary judgment for defendant, "we recite and consider the facts in the light most favorable to the plaintiff." *Wright-Simmons v. City of Okla. City*, 155 F.3d 1264, 1266 (10th Cir. 1998). Indeed, most of the facts evidenced in our record derive from plaintiff's own deposition.

Plaintiff worked for defendant briefly in 1999, but quit when promised benefits did not materialize. None of the events he complains of here occurred during that initial stint. He hired back on in January 2000 under the supervision of Lee Carroll. Plaintiff lasted less than two weeks in the store where Carroll worked, when he was transferred to the main store because of poor work performance.

During his time at the company's branch store, plaintiff accused Carroll of engaging in excessive religious proselytizing in the workplace. Though plaintiff was raised Catholic and was attending Episcopalian services at the time, he nevertheless became a focus of Carroll's religious exhortation. The triggering event appears to have been an occasion when plaintiff, whose grandmother had been Jewish, accompanied a Jewish co-worker, Sharon Yantes, to temple services.

After learning of this, Carroll repeatedly told plaintiff—in public and on the open sales floor—that "Jesus Christ is alive; Moses is dead."

In general, Carroll expressed his religious views to everyone at the store. He prayed in office meetings and his religious commentary was expressed on the sales floor. With respect to plaintiff in particular, Carroll used requests for training or assistance as occasions for impromptu prayer sessions. Plaintiff complained about Carroll to management, though it is not clear from his testimony how and when he did so.

Within two weeks, plaintiff was transferred to another store. He was told this was an opportunity to improve his sales performance, but he later learned that slow business at his new location made it difficult if not impossible to earn a living on commissions there—a fact that was common knowledge within the company. Within a short time he left defendant's employ, a decision he attributes to a combination of factors, including Carroll's religious harassment.

Discriminatory/Retaliatory Transfer

Plaintiff's claims of discrimination and/or retaliation in connection with his transfer are subject to the burden-shifting scheme of *McDonnell Douglas Corp. v. Green*, 411 U.S. 792, 802-04 (1973). *Mattioda v. White*, 323 F.3d 1288, 1291, 1293 (10 th Cir. 2003). Under this three-step scheme, the plaintiff must first establish a prima facie case of proscribed conduct; if he does so, the burden shifts

to the defendant to provide a legitimate reason for the employment action in question; finally, if the defendant satisfies this burden, the plaintiff must demonstrate that the legitimate reasons proffered by the defendant are merely a pretext for the alleged improper motivation. *See id.*, at 1291. These steps guide the disposition of a Title VII claim challenged on summary judgment; the plaintiff must demonstrate triable issues of fact to defeat the motion. *See, e.g.*, *Kelley v. Goodyear Tire & Rubber Co.*, 220 F.3d 1174, 1177 (10 th Cir. 2000) (following *Randle v. City of Aurora*, 69 F.3d 441, 451 (10 th Cir. 1995)).

Plaintiff cites the close temporal proximity of his conflict with Carroll and his transfer to establish a prima facie case. The suggestive timing of events can establish a prima facie case of discrimination or retaliation. *See, e.g.*, *Selenke v. Med. Imaging of Colo.*, 248 F.3d 1249, 1260 (10 th Cir. 2001) (discrimination); *Pastran*, 210 F.3d at 1205 (retaliation). The district court assumed that plaintiff had made out a prima facie case with regard to his transfer and went on to dispose of the claim at the pretext stage, where the legal deficiency in plaintiff's case was readily evident. We follow the same approach.

Defendant insists that company management transferred plaintiff to its main store, where management was located, because of his poor sales performance. Defendant showed, through materials plaintiff has not included in the record and thus cannot challenge, *see generally Deines v. Vermeer Mfg. Co.*, 969 F.2d 977,

979-80 (10 th Cir. 1992), that plaintiff generated a mere $66 in sales commissions during his first two weeks.

Plaintiff did not counter this showing with additional evidence to show that defendant's rationale was pretextual. His case rested on the timing of his transfer and his belief that it reflected the improper motives he alleged, neither of which is a sufficient basis to survive summary judgment at the pretext stage. While timing may suffice to create a prima facie case, "when a defendant articulates a reason for [the challenged action], establishing a prima facie case is not sufficient to avoid summary judgment." *Selenke*, 248 F.3d at 1260. The prima facie inference of improper motive based on timing alone does not carry forward to undermine a legitimate rationale articulated by the defendant for the challenged action; thus, absent additional evidence to undermine such a rationale, the defendant is entitled to summary judgment. *Id.* at 1260-61; *Meiners v. Univ. of Kan.*, 239 F. Supp. 2d 1175, 1195 (D. Kan. 2002) (following *Selenke*); *cf. Pastran*, 210 F.3d at 1206-07 (acknowledging that timing "is not sufficient by itself to raise an issue of fact" on pretext, but holding that other probative evidence precluded summary judgment).

As for plaintiff's personal suspicions, mere conjecture and subjective belief about an employer's motives cannot defeat summary judgment. *See, e.g.*, *Aramburu v. The Boeing Co.*, 112 F.3d 1398, 1408 n.7 (10 th Cir. 1997).

Therefore, we affirm the grant of summary judgment to defendant on plaintiff's claims relating to his inter-store transfer.

Hostile Work Environment

Plaintiff's hostile environment claim rests on the conduct of his supervisor, Lee Carroll, summarized earlier. The district court held that this conduct could not support a Title VII claim because (1) there was no evidence that plaintiff suffered intentional discrimination because of religion since any harassment directed at plaintiff was free of proscribed religious animus, and (2) the harassment was not severe enough to give rise to an actionable hostile work environment. We affirm on the latter rationale.

To survive summary judgment on this claim, plaintiff had to "show that a rationale jury could find that the workplace is permeated with discriminatory intimidation, ridicule, and insult, that is sufficiently sever or pervasive to alter the conditions of the victim's employment." *Stinnett v. Safeway, Inc.*, 337 F.3d 1213, 1219 (10 th Cir. 2003) (quotation omitted). And the "objectionable environment must be both objectively and subjectively offensive, one that a reasonable person would find hostile or abusive, and one that the victim in fact did perceive to be so." *Id.* (quotation omitted). According to plaintiff's deposition testimony, he experienced the objectionable religious-based comments only *after* the first week of a two-week stint under Carroll's supervision, and it is not clear whether he

even complained to management about the religiously-oriented speech until some time after his transfer. We cannot conclude that the district court erred in finding that Carroll's statements did not create an objectively or subjectively hostile environment after only one week's time, especially where plaintiff has not shown that he was upset enough to promptly complain to management and where his transfer was, as we have already seen, not pretextual.

For the foregoing reasons, the judgment of the district court is AFFIRMED.


Entered for the Court
Per Curiam

03-5019, *Sprague v. Adventures, Inc.*
**TYMKOVICH** , J., concurring.

There is another, fundamental concern implicated here that has not been addressed in our cases. Title VII hostile workplace cases raise troublesome questions of how and when employee speech may be regulated. Concerns about free expression are especially pronounced in cases like this one where the allegations of hostility are apparently based on an employee's affirmations of faith and belief to another employee. The problem arises when the listener is "offended" by the speech because it is "unwanted" or "uncomfortable." The offensiveness of the speech is surely rooted in the message being conveyed. The message then becomes the basis of a hostile workplace. While Title VII rightly condemns acts of religious discrimination in the workplace, the line between permissible religious commentary in the workplace and a religiously hostile workplace quickly becomes fuzzy. That is especially true where, as here, there is no record evidence that the plaintiff was terminated "because of [his] religion." 42 U.S.C. § 2000e-2(a).

We have previously held that the First Amendment generally does not preclude a hostile work environment claim "in the context of a sexual harassment action." *Baty v. Willamette Indus., Inc.*, 172 F.3d 1232, 1247 (10th Cir. 1999). We have not had the occasion, however, to discuss the contours of the application of the doctrine to specific cases of religious speech by employees in

the workplace, especially where the complainant attempts to hold the employer vicariously liable for religious-oriented speech by its employees.

There is a growing body of commentary regarding these difficult issues. *See, e.g.,* Eugene Volokh, *What Speech Does "Hostile Work Environment" Harassment Law Restrict?*, 85 Geo. L.J. 627 (1997), available in substantially updated form at http:// www.law.ucla.edu/faculty/volokh/harass/breadth.htm; Kingsley R. Browne, *Zero Tolerance for the First Amendment: Title VII's Regulation of Employee Speech*, 27 Ohio N.U. L. Rev. 563 (2001); Kimball E. Gilmer & Jeffrey M. Anderson, *Zero Tolerance for God?: Religious Expression in the Workplace After* Ellerth *and* Faragher, 42 How. L.J. 327, 344-45 (1999); *see also Saxe v. State College Area Sch. Dist.*, 240 F.3d 200, 210 (3d Cir. 2001) (examining anti-harassment policies); *but see Robinson v. Jacksonville*, 760 F. Supp. 1486, 1534-37 (N.D. Fla. 1991) (listing six grounds for upholding hostile work environment claim against First Amendment challenge). Had plaintiff succeeded here in overturning summary judgment on the existing record, these issues could well have taken center stage as the facts became more developed on remand.

03-5019, *Sprague v. Adventures, Inc.*
**HOLLOWAY** , J., concurring in part and dissenting in part.


I concur in the majority's disposition of the discriminatory/retaliatory transfer claim. But I respectfully dissent from the majority's disposition of the hostile work environment claim.

As a threshold matter, the district court rejected the idea that any "comment or proselytizing on behalf of Plaintiff's Christian supervisor [could have] caused [plaintiff], who is also a Christian, to suffer any intentional discrimination because of religion." [1] Aplt. App. at 174. The majority opinion did not have to address this categorical dismissal of Christian-on-Christian religious harassment, as it affirms the rejection of plaintiff's hostile work environment claim for lack of the requisite severe/pervasive hostility. Given my disagreement with the majority on the latter point, it is incumbent upon me to explain briefly why I would not concur in the result on the basis of the former rationale alternatively relied upon by the district court, i.e., why I conclude a supervisor's religious hostility that is otherwise actionable does not cease to be so merely because a subordinate shares the same, broadly denominated, religious identity.

---

[1] The district court denied summary judgment to defendant on a consolidated claim of religious hostility asserted by Sharon Yantes, despite a very similar evidentiary record. At the summary judgment hearing, the court indicated that given the distinctly Christian prejudices expressed by Carroll, it viewed the fact that plaintiff was also Christian while Yantes was Jewish "a glaring distinction in the facts as they exist between [plaintiff] and Ms. Yantes." Aplt. App. at 215.

The Sixth Circuit recognized some time ago that if a Christian employer's favorable treatment of a Christian employee depends on the nature or extent of the employee's perceived commitment to the employer's religious views or standards, an actionable religious animus exists. *See Blalock v. Metal Trades, Inc.*, 775 F.2d 703, 704-05, 708 (6 th Cir. 1985). In much broader but equally pertinent terms, this court has held that Title VII generally protects against "requirements of religious conformity," which includes "'all aspects of religious observance and practice, as well as belief.'" *Shapolia v. Los Alamos Nat'l Lab.*, 992 F.2d 1033, 1036 (10 th Cir. 1993) (quoting 42 U.S.C. § 2000e(j)). Here, Carroll's efforts to impose on his subordinates a workplace conforming to his particular notions of Christian observance and belief fall within the compass of the statute, regardless of any commonality in their religious faith.

I turn now to the severity of the hostility directed at plaintiff, which is the focus of my dissent from the majority's disposition. As the majority notes, the question is whether "a rational jury could find that the workplace is permeated with discriminatory intimidation, ridicule, and insult, that is sufficiently severe or pervasive to alter the conditions of the victim's employment and create an abusive working environment." *Davis v. United States Postal Serv.*, 142 F.3d 1334, 1341 (10th Cir. 1998) (quotations omitted). We must look to "all the circumstances involved in the situation," including "the frequency of the discriminatory conduct;

-2-

its severity; whether it [was] physically threatening or humiliating, or a mere offensive utterance; and whether it unreasonably interfere[d] with [plaintiff's] work performance," and assess whether "the environment would be reasonably perceived (objectively) and [was] perceived (subjectively), as hostile or abusive." *Nieto v. Kapoor*, 268 F.3d 1208, 1218, 1220 (10 th Cir. 2001) (quotation omitted).

Regarding frequency, plaintiff testified that Carroll subjected him (and his co-workers, with customers observing) [2] to an incessant barrage of religious peroration and intimidation, including hourly harassment on the sales floor and involuntary prayer meetings in his office. Aplt. App. 83-86, 88. As for severity, I cannot discount as a minor workplace irritant the constant religious bullying and threats of damnation cited by plaintiff, particularly as Carroll claimed to have the power to deprive him of his job, *see id.* at 84 (depo. at 37). The offensiveness, if not humiliation, involved was heightened by the fact that these were not just private exchanges but often quite public statements. And plaintiff testified this conduct directly interfered with his job in at least two different ways: Carroll's intemperate religious comments on the sales floor drove customers away, *see id.* at 83 (depo. at 36), 86 (depo. at 45), and Carroll stopped training and assisting him once their religious conflict arose, *see id.* at 88 (depo. at 53). In connection

---

[2] "A finding of pervasiveness or severity need not rest solely on actions aimed directly at a plaintiff, however, but may also consider harassment of others in the workplace." *Nieto*, 268 F.3d at 1219 n.7.

with these last allegations, I note that defendant's stated reason for plaintiff's inter-store transfer – his very poor sales performance at the store where Carroll worked – while a legitimate justification undercutting plaintiff's challenge to his transfer, is entirely consistent with his hostile work environment claim.

The points made above regarding frequency, severity, offensiveness, and interference with performance indicate to me that plaintiff's work environment could reasonably be perceived as hostile or abusive by anyone whose religious views or deportment elicited Carroll's denunciation or intrusive proselytizing. And plaintiff certainly indicated that he perceived the environment in that way. *See also id.* at 91-93.

On the record developed thus far, which concededly may be skewed by the prominence of plaintiff's testimony, I cannot say that defendant has negated the existence of a triable case on the factors that control the disposition of plaintiff's hostile environment claim. I would therefore reverse the entry of summary judgment for the defendant on this one particular aspect of the case and remand for further proceedings.