EBEL, Circuit Judge,
concurring in part and dissenting in part.
I concur in the majority opinion’s ruling that it was error for the district court to grant summary judgment for Plaintiff-Ap-pellee Equal Employment Opportunity Commission (“EEOC”) in this case. However, I dissent in part from the majority’s opinion, to the extent that it enters summary judgment for Defendant-Appellant Abercrombie & Fitch Stores, Inc. (“Aber-crombie”), because I conclude on this record that a jury should decide whether Abercrombie is hable for religious discrimination.
Title VII prohibits religious discrimination in employment, including an employer’s refusal to hire a job applicant because of her religion. 42 U.S.C. § 2000e-2(a)(l). Title VII defines religious discrimination to include an employer’s failure to accommodate a job applicant’s religious practices, if the employer can reasonably do so without incurring undue hardship to the conduct of its business. Id. § 2000e(j); see Thomas v. Nat’l Ass’n of Letter Carriers, 225 F.3d 1149, 1154-55 (10th Cir.2000). Title VII imposes on the employer the duty to reasonably accommodate the religious practices of a job applicant through “an interactive process that requires participation” by both the employer and the applicant. Thomas, 225 F.3d at 1155.
The EEOC, on behalf of Samantha Elauf, established a triable claim that Abercrombie discriminated against Elauf on the basis of her religion when Aber-crombie refused to hire her because of her religious practice of wearing a hijab, or head covering. Specifically, the EEOC set forth evidence from which a jury could find that Abercrombie refused to hire Elauf, without ever informing her that wearing a hijab conflicted with Abercrombie’s Look Policy, in order to avoid having to discuss the possibility of reasonably accommodating Elauf s religious practice. If true, that would be religious discrimination proscribed by Title VII. Thus, I would remand this claim for a jury trial.
I. The majority’s inflexible requirement that the EEOC must first establish, as part of its prima facie claim, that Elauf informed Aber-crombie that its Look Policy conflicted with her religious practice of wearing a hijab makes no sense under the law or the circumstances presented by this case
The majority concludes that an employer’s obligation to engage in an interactive dialogue with a job applicant regarding the need for a reasonable accommodation of her religious practice is triggered only when the job applicant herself informs the *1144 employer that her religious practice conflicts with a requirement of the job for which she is applying. The majority reaches this conclusion after applying the modified McDonnell Douglas burden-shifting framework applicable to failure-to-accommodate claims and holding, at the first step of that analysis, that the EEOC failed to establish a prima facie claim.[1]
In several previous cases where the existence of a prima facie claim was not disputed, this court stated the elements of a prima facie failure-to-accommodate claim to be that the plaintiff “(1) ... had a bona fide religious belief that conflicts with an employment requirement; (2) he or she informed his or her employer of this belief; and (3) he or she was [not hired] for failure to comply with the conflicting employment requirement.” Thomas, 225 F.3d at 1155 (addressing termination claim); see also Toledo v. Nobel-Sysco, Inc., 892 F.2d 1481, 1486 (10th Cir.1989). Applying these elements to this case, the majority rejects the EEOC’s failure-to-accommodate claim as a matter of law because Elauf never informed Abercrombie that her religious practice of wearing a hijab conflicted with Abercrombie’s Look Policy.
Of course, the reason Elauf never informed Abercrombie of this conflict is that, accepting her evidence as true as we must, Elauf did not know that there was a conflict between her religious practice of wearing a hijab and Abercrombie’s Look Policy. However, critically, Abercrombie did know there might be a conflict, because it knew that Elauf wore a headscarf, assumed she was Muslim and that she wore the headscarf for religious reasons, and knew its Look Policy, as ultimately determined by Randall Johnson, the person who made the decision not to hire Elauf, prohibited its sales models from donning headwear. Based on these assumptions, and without ever informing Elauf that Johnson ultimately determined that the hijab would not be allowed, Aber-crombie refused to hire her because she wore a hijab. In this way, Abercrombie was able to avoid any interactive dialogue with Elauf about whether Abercrombie could reasonably accommodate Elaufs religious practice.
Under these circumstances, it makes no sense to apply, reflexively and inflexibly, the second element of the ordinary prima facie failure-to-accommodate claim to require Elauf to show first that she informed Abercrombie that her religious practice conflicted with Abercrombie’s Look Policy, when that policy’s proscription against wearing a headscarf at work had never been disclosed to her. Nor are we bound, as the majority suggests, to apply the elements of a prima facie failure-to-accommodate claim as set forth in prior, factually *1145 distinct cases that did not raise or resolve the issue before us of whether it is the applicant’s burden in the first instance to request a religious accommodation to an undisclosed employer’s policy.
I conclude we are not bound here to apply this court’s prior rendition of the elements of a prima facie failure-to-accommodate claim, for several reasons. First and foremost, the specific elements of a prima facie claim must be flexible, in order to address the specific circumstances presented by a given case. The Supreme Court stressed this when it first set forth the McDonnell Douglas analytical framework. McDonnell Douglas, 411 U.S. at 802 n. 13, 93 S.Ct. 1817 (noting that “[t]he facts necessarily will vary in Title VII cases, and the specification [in McDonnell Douglas ] of the prima facie proof required from [the plaintiff] is not necessarily applicable in every respect to differing factual situations”). This court has, on numerous occasions, recognized the need to modify the elements of a prima facie discrimination claim to fit the facts of a given case. See Stover v. Martinez, 382 F.3d 1064, 1077 (10th Cir.2004) (noting McDonnell Douglas framework, as “modified to reflect the particular factual situation at hand,” applied to Title VII religious discrimination claims); Shapolia v. Los Alamos Nat’l Lab., 992 F.2d 1033, 1036-38 (10th Cir.1993) (declining to apply prima facie elements of a failure-to-accommodate claim to a cause of action alleging that the employer fired the plaintiff employee because the employee did not share his supervisors’ religious beliefs; applying, instead, a modified version of the elements of a straightforward prima facie discrimination claim).[2] “The prima facie case method established in McDonnell Douglas was ‘never intended to be rigid, mechanized, or ritualistic.’ ” U.S. Postal Serv. Bd. of Governors v. Aikens, 460 U.S. 711, 715, 103 S.Ct. 1478, 75 L.Ed.2d 403 (1983) (quoting Furnco Constr. Co. v. Waters, 438 U.S. 567, 577, 98 S.Ct. 2943, 57 L.Ed.2d 957 (1978)).
The importance of McDonnell Douglas lies, not in its specification of the discrete elements of proof there required, but in its recognition of the general principle that any Title VII plaintiff must carry the initial burden of offering evidence adequate to create an inference that an employment decision was based on a discriminatory criterion illegal under the Act.
Int’l Bhd. of Teamsters v. United States, 431 U.S. 324, 358, 97 S.Ct. 1843, 52 L.Ed.2d 396 (1977) (rejecting, in pattern- or-practice case, argument that “the McDonnell Douglas pattern [w]as the only means of establishing a prima facie case of individual discrimination”).
Second, the plaintiffs burden of presenting a prima facie discrimination claim under Title VII is not meant to be onerous. See Tex. Dep’t of Cmty. Affairs v. Burdine, 450 U.S. 248, 253, 101 S.Ct. 1089, 67 L.Ed.2d 207 (1981) (“The burden of establishing a prima facie case” of disparate treatment is not onerous.); see also Shapolia, 992 F.2d at 1038 (noting burden of establishing prima facie religious discrimination claim is not onerous). Here, the majority not only made this initial burden onerous, but also made it preclusive of a claim for relief.
*1146 Third, the purpose of the McDonnell Douglas burden-shifting framework, of which the prima facie claim is a part, is different in the context of a failure-to-accommodate claim than it is for a Title VII claim alleging discrimination generally. See Thomas, 225 F.3d at 1155 n. 6. In a straight discrimination claim, the prima facie claim serves the purpose of probing whether the employer intended to discriminate. See id.; Smith v. Midland Brake, Inc., 180 F.3d 1154, 1178 n. 12 (10th Cir.1999) (reh’g en banc). The purpose of applying a modified version of the McDonnell Douglas burden-shifting analysis in the context of an accommodation case, on the other hand, is “simply to provide a useful structure by which the district court, when considering a motion for summary judgment, can determine whether the various parties have advanced sufficient evidence to meet their respective traditional burdens to prove or disprove the reasonableness of the accommodations offered or not offered.” Thomas, 225 F.3d at 1155 n. 6 (quoting Smith, 180 F.3d at 1178 n. 12). So, if the plaintiff asserts evidence which, if believed, would establish the employer’s liability for failing to accommodate a job applicant’s religious practices, then the plaintiff has established a prima facie failure-to-accommodate claim. As explained below, the EEOC has met that less-than-onerous burden here.
Before addressing how the EEOC has established a prima facie failure-to-accommodate claim in this case, however, I would stop to note that I agree with the majority that, in the ordinary case, it is the job applicant who must inform the employer that she has a religious belief that conflicts with the requirements of the job for which she is applying. This makes sense, of course, because generally it will be the job applicant who will have superior knowledge of that conflict. It is the job applicant who knows of her religious beliefs and practices. When she becomes aware that a requirement of the job for which she is applying conflicts with her beliefs, the onus is on the job applicant to inform the employer of this conflict and the need for any accommodation. Under such circumstances, the employer has no obligation to participate in the interactive process of exploring the possibility of a reasonable accommodation until the employer knows of the conflict.[3] See E.E.O.C. v. C.R. England, Inc., 644 F.3d 1028, 1049 (10th Cir.2011) (Americans with Disabilities Act case).[4] Therefore, I do not doubt that our generalized rendition of the *1147 elements of a prima facie failure-to-accommodate claim, which require the plaintiff to show that she informed the employer of a conflict between her religious practices and the job requirements, will still apply to most failure-to-accommodate claims. But that does not mean that we must force all failure-to-accommodate claims into this prima facie mold when it makes no sense to do so under the particular facts of a given case. And that is the situation here, where, based on the EEOC’s evidence, it was Abercrombie with superior knowledge of the conflict between its Look Policy and Elaufs apparent religious practice, a conflict of which Elauf was unaware.
For the reasons that follow, then, I disagree with the majority’s approach in this case of requiring the EEOC, in order to state a prima facie claim, to show that Elauf informed Abercrombie that her religious practice of wearing a hijab conflicted with Abercrombie’s Look Policy, the relevant provisions of which Elauf was unaware.
II. The EEOC established a prima fa-cie claim that Abercrombie failed to accommodate Elaufs religious practice of wearing a hijab
In order to survive summary judgment, the EEOC had to establish a prima facie claim by asserting evidence that, if believed, would support Abercrombie’s liability for failing to accommodate Elaufs religious practice of wearing a hijab. See Thomas, 225 F.3d at 1155 n. 6. I conclude the EEOC met that less-than-onerous burden by showing four things: (1) Elauf had a bona fide religious belief that conflicts with Abercrombie’s Look Policy; (2) she was not aware of Abercrombie’s conflicting policy; (3) but Abercrombie had knowledge that Elauf might hold religious beliefs that conflicted with its Look Policy; and (4) without informing Elauf of the provisions of its Look Policy that might conflict with her religious beliefs, Aber-crombie instead refused to hire Elauf because of that possible conflict.
As to the first element, the district court held that the EEOC established, as a matter of law, that Elauf held a bona fide religious belief that she must wear a hijab in public. Although Abercrombie challenged that determination on appeal, I would affirm the district court’s decision in that regard.
As to the second element, that Elauf was not aware that Abercrombie’s Look Policy conflicted with her religious practice of wearing a hijab, it is undisputed that Abercrombie’s managers never informed Elauf that the Look Policy prohibited headscarves.[5] (Aplt.App. at 299; Aple. Supp.App. at 49.) Further, there was evidence that, before she applied for a job with Abercrombie, Elauf, through a friend, inquired of one of Abercrombie’s store managers whether there was a problem with her wearing a hijab while working in an Abercrombie store and was told that it would be no problem so long as the hijab was not black.[6] (Aplt.App. at 50-52, 393.)
As to the third element of the EEOC’s prima facie claim, that Abercrombie had *1148 knowledge that Elauf might hold religious beliefs that conflicted with its Look Policy, it is undisputed that Heather Cooke, the Abercrombie assistant store manager who interviewed Elauf, “assumed that [Elauf] was Muslim,” (id. at 307), assumed that Elauf wore a hijab for “religious reasons,” (id.), and assumed that Elauf would wear a hijab while working in an Abercrombie store. (Id. at 306-07; Aple. Supp.App. at 48.)
The EEOC’s showing of the second and third elements — that Elauf was unaware that her religious practice of wearing a hijab conflicted with the Look Policy, but that Abercrombie was aware there might be such a conflict — establishes circumstances that justify applying here a common sense exception to the usual rule that, in order to trigger an employer’s duty to participate in the interactive dialogue regarding reasonable accommodation, the job applicant must first inform the employer that she holds religious beliefs that conflict with the job’s requirements. Recognizing such a common sense exception under these circumstances is consistent with cases generally recognizing similar exceptions. For example, in the context of an employer’s reasonable accommodation of disabilities under the Americans with Disabilities Act (“ADA”), we require, as a precondition to suit, that the employee have requested an accommodation “unless the employer has foreclosed the interactive process through its policies or explicit actions.” Koessel v. Sublette Cnty. Sheriff’s Dep't, 717 F.3d 736, 744 (10th Cir.2013) (emphasis added) (internal quotation marks omitted). And the Ninth Circuit, again under the ADA, has recognized an exception to the requirement that the employee request an accommodation for his disability, under circumstances where the employer knows that the employee has a disability, knows that the employee is having trouble at work due to his disability, and knows, or has reason to know, that the disability prevents the employee from requesting an accommodation. See Brown v. Lucky Stores, Inc., 246 F.3d 1182, 1188 (9th Cir.2001). There are, then, exceptions to the general rule that an employer’s obligation to consider a reasonable accommodation is not triggered unless and until an employee or job applicant informs the employer of the need for an accommodation.
Even more directly analogous to the situation here, other circuits have held that a job applicant or employee can establish a prima facie religious failure-to-accommodate claim if she can show that the employer knew of a conflict between the plaintiffs religious beliefs and a job requirement, regardless of how the employer acquired knowledge of that conflict.[7] These cases conclude that “[a]n employer need have ‘only enough information about *1149 an employee’s religious needs to permit the employer to understand the existence of a conflict between the employee’s religious practices and the employer’s job requirements.’ ” Brown, 61 F.3d at 654 (8th Cir.) (quoting Heller, 8 F.3d at 1439 (9th Cir.)). I would rely on this principle here. To my mind, once the employer knows of, or should know of, a conflict, or the likelihood of a conflict, the employer is then obligated to interact with the job applicant about the likely conflict in order to determine if there is a reasonable accommodation for the job applicant’s religious practices. At that point, the need for accommodation has been put on the table for discussion and the employer, with superior knowledge of its ability to accommodate, can no longer ignore the need to initiate dialogue with the employee regarding reasonable accommodations.
Thus, where, as here, the employer has knowledge of a credible potential conflict between its policies and the job applicant’s religious practices, the employer has a duty to inquire into this potential conflict. This duty does not, however, obligate the employer to inquire, open-endedly, about the applicant’s religious beliefs and practices. Under the circumstances presented here, Abercrombie only had a duty to disclose to Elauf that its Look Policy prohibited Elauf from wearing any headwear while working in one of Abercrombie’s stores, when it had notice of facts that suggested to it the possibility of such a conflict. This inquiry would have been sufficient to initiate any needed dialogue between the job applicant, Elauf, and the employer, Abercrombie, as to whether Elauf had religious beliefs that conflicted with Abercrombie’s dress code, beliefs which perhaps would be addressed by an accommodation.[8]
The majority disagrees with the cases from these other circuits (thereby creating *1150 a conflict among the circuits) which permit a plaintiff to establish a prima facie failure-to-aceommodate claim by establishing that the employer knew, by any means, of a conflict between the plaintiffs religious practices and the employer’s work rules. I would follow the holdings in those case but, even without relying on those cases here, the EEOC has still put forth evidence establishing the fourth element of her prima facie claim, that Abercrombie assumed that Elauf was Muslim, that she wore a hijab for religious reasons, and that she would insist on wearing a hijab while working in an Abercrombie store, and then, based on those assumptions and without first initiating any dialogue with Elauf to verify its assumptions, Abercrom-bie refused to hire Elauf because she wore a hijab. (Aplt.App. at 306-07; Aple. Supp. App. at 48, 51.)
Those facts, if found by a jury, smack of exactly the religious discrimination that Title VII prohibits. And a jury could further find, from such facts, that Abercrom-bie, based on its superior knowledge of a possible conflict between Elaufs religious practice and Abercrombie’s Look Policy, was able affirmatively to avoid its obligation to engage in an interactive dialogue with Elauf about a reasonable accommodation of Elaufs religious practice by not mentioning the possible conflict and then not hiring her because of it. See Bartee v. Michelin N. Am., Inc., 374 F.3d 906, 916 (10th Cir.2004) (noting, in ADA case, that employer’s refusal to participate in an interactive process could result in liability); Albert v. Smith’s Food & Drug Ctrs., Inc., 356 F.3d 1242, 1253 (10th Cir.2004) (noting, in an ADA case, that “[njeither party may create or destroy liability by causing a breakdown of the interactive process”).[9] On the record in this particular case, a jury could find Abercrombie liable for violating Title VII’s proscription against religious discrimination in employment on this basis. The EEOC, therefore, has established a prima facie failure-to-accommodate claim.
In conclusion, let me be very clear. I am not suggesting that the employer has a general duty, during a job interview, to give the applicant a comprehensive “laundry list” of all of the employer’s work policies in order to determine if those job requirements might possibly conflict with an applicant’s unstated religious beliefs or practices. I agree that the burden ordinarily remains with the job applicant to inform the employer of any conflict between the job’s requirements and her religious beliefs and practices, because it will usually be the applicant, and not the employer, who knows of such a conflict. However, I am also not suggesting, as the majority appears to be, that a job applicant must initiate a general discussion of her religious beliefs during the job interview just in case her religious beliefs and practices might conflict with some unstated policy or work rule of the employer. The EEOC has shown here that it was the employer, Abercrombie, which had superi- or knowledge of a possible conflict between *1151 its Look Policy and Elaufs apparent religious practice of wearing a hijab. Under those facts, established after viewing the evidence in light most favorable to the EEOC,[10] Abercrombie had a duty to initiate a dialogue with Elauf by informing her that Abercrombie’s Look Policy prohibited its sales models from wearing headwear and then inquiring whether she could comply with that policy, or whether Abercrom-bie could accommodate her belief in some reasonable way. Said another way, a jury could find Abercrombie liable under Title VII for assuming that Elauf was a Muslim who wore a hijab for religious reasons and that she would insist on wearing a hijab while working in one of Abercrombie’s stores, and then, without initiating a dialogue with Elauf to verify those assumptions, refused to hire Elauf based upon the company’s assumptions.[11]
III. Because Abercrombie’s evidence contradicted the EEOC’s prima fa-cie evidence, that created a triable issue of fact as to whether Aber-crombie failed to accommodate Elaufs religious practice of wearing a hijab; therefore, a jury trial is required
The district court entered summary judgment for the EEOC. The majority reverses that determination and concludes that summary judgment should enter, instead, for Abercrombie. I agree that the EEOC is not entitled to summary judgment because there is conflicting evidence on both sides. However, for the same reason, I dissent from the entry of summary judgment on behalf of Abercrombie. I would, instead, remand for a jury trial because there are factual disputes as to whether the circumstances presented here triggered Abercrombie’s duty to initiate an interactive dialogue with Elauf in order to determine whether she had a religious practice that conflicted with Abercrombie’s Look Policy. In light of these factual disputes, a jury must decide the EEOC’s failure-to-accommodate claim asserted on Elaufs behalf. Therefore, I would remand that claim for trial.[12]

. Generally courts addressing a discrimination claim under Title VII apply the burden-shifting analysis set forth in McDonnell Douglas Corp. v. Green, 411 U.S. 792, 800-05, 93 S.Ct 1817, 36 L.Ed.2d 668 (1973). Under that analysis, the plaintiff employee or job applicant must first set forth a prima facie claim of discrimination. Id. at 802, 93 S.Ct. 1817. If the plaintiff is able to do so, the employer must then articulate a legitimate, nondiscriminatory reason for taking the challenged employment action. Id. Thereafter, the burden shifts back to the plaintiff to show that the employer's proffered reason was really a pretext for discrimination. Id. at 804, 93 S.Ct. 1817. In addressing a claim of religious discrimination based upon a failure-to-accommodate theory, however, we apply a modified, two-step McDonnell Douglas analysis, asking first whether the plaintiff employee or job applicant established a prima facie failure-to-accommodate claim. See Thomas, 225 F.3d at 1155. If so, then the burden shifts to the employer to do one of three things: (1) rebut one or more of the elements of the plaintiff's prima facie case; (2) show it offered the plaintiff a reasonable accommodation; or (3) show it was unable to reasonably accommodate the plaintiff’s religious practice without undue hardship. Id. at 1156.

. See also, e.g., Garrison v. Gambro, Inc., 428 F.3d 933, 937 (10th Cir.2005); Plofke v. White, 405 F.3d 1092, 1099-1100 (10th Cir.2005); Mattioda v. White, 323 F.3d 1288, 1291-93 (10th Cir.2003); Rakity v. Dillon Cos., 302 F.3d 1152, 1164 (10th Cir.2002); Morgan v. Hilti, Inc., 108 F.3d 1319, 1323 (10th Cir.1997); Greene v. Safeway Stores, Inc., 98 F.3d 554, 559-60 (10th Cir.1996); Randle v. City of Aurora, 69 F.3d 441, 451 n. 13 (10th Cir.1995); Lucas v. Dover Corp., 857 F.2d 1397, 1400-01 (10th Cir.1988); Crawford v. Ne. Okla. State Univ., 713 F.2d 586, 588 (10th Cir.1983).

. It may also be the case in some situations that neither the employer nor the job applicant will know that there is a conflict between the job’s requirements and the applicant’s religious practices, because the employer will be aware of its work rules and the applicant will know her religious beliefs, but neither side will inform the other of these matters during the course of a job interview. Under such circumstances, no dialogue will occur between the job applicant and the employer as to this unidentified conflict, through no fault of either party. In that scenario, the employer would not be liable for failure to accommodate. However, here the facts are sufficient to permit (though not compel) a jury to find that Abercrombie did know, or thought it knew, of Elauf's religious beliefs and subverted the interactive process by declining to pursue her employment application without discussing the possibility of an accommodation with her. Thus, it is error, in my opinion, to grant summary judgment to Abercrombie on this record.

. Because both the Americans with Disabilities Act and Title VII's proscription against religious discrimination impose an affirmative obligation on employers to make reasonable accommodation, the Tenth Circuit applies case law addressing both statutes when considering issues surrounding reasonable accommodation. See Thomas, 225 F.3d at 1155 & n. 5; see also Maj. Op. at 1122-23, 1141— 43.

. Three of the four Abercrombie managers involved here interpreted the Look Policy to permit headscarves, so long as they were not black in color. (Aplt.App. at 393; Aple. Supp. App. at 49, 51; Maj. op. at 1113-14.) There is evidence that this would have been an acceptable accommodation of Elaufs religious beliefs. (Aplt.App. at 52.)

. The majority contends that this evidence does not establish that Elauf expressly informed Abercrombie of her religious practice of wearing a hijab and expressly sought an accommodation for that practice. I agree. But this evidence is relevant to show Elaufs state of mind, that when she interviewed for a position with Abercrombie, she did not think that the Look Policy prevented her from wearing a hijab at work. Moreover, it seems reasonable for a job applicant to check with an employer (here, the employer's representa *1148 tive, an assistant store manager) as to the requirements for the job and to rely upon that information unless told differently in her interview. Further, this evidence arguably suggests that Abercrombie affirmatively misled Elauf into believing that there was no problem with her wearing a hijab while working in one of Abercrombie’s stores, which may explain why she did riot raise the issue during her job interview.

. See Dixon v. Hallmark Cos., 627 F.3d 849, 855-56 (11th Cir.2010) (rejecting argument that plaintiff employees who operated a property management office had failed to assert a prima facie failure-to-accommodate claim because they did not inform the employer of their specific belief that God should not be removed from public places, where there was ample evidence that their supervisor was already aware that there was a tension between the plaintiffs' religious beliefs and the employer's policy against displaying religious artwork in the employer's property management offices); Brown v. Polk Cnty., 61 F.3d 650, 652-53 (8th Cir.1995) (rejecting employer's argument that employee never explicitly requested an accommodation of his religious *1149 activities because employer was already aware of “the potential for conflict'' between the employee’s religious activities and the employer’s work rules because the employee had previously been reprimanded for his religious activities at work); Hellinger v. Eckerd Corp., 67 F.Supp.2d 1359, 1361-63 (S.D.Fla.1999) (holding orthodox Jew who applied for pharmacist position and whose religious beliefs precluded his selling condoms, stated at least a prima facie failure-to-accommodate claim even though the employer discovered this conflict between the applicant's religious beliefs and the job requirements, not from the applicant, but from one of the applicant's job references; noting that “[i]t would be hyper-technical, based on the facts of this case, to require notice of the Plaintiff's religious beliefs to come only from the Plaintiff. The notice requirement is meant in part to allow the company an opportunity to attempt to reasonably accommodate the Plaintiff’s beliefs. The [employer] was not deprived of the opportunity to attempt to accommodate the Plaintiff's beliefs merely because the notice did not come from the Plaintiff.”); see also Heller v. EBB Auto Co., 8 F.3d 1433, 1436-37, 1439 (9th Cir.1993) (in addressing claim that car dealership fired one of its salesmen for missing work to attend a ceremony for his wife’s conversion to Judaism, rejecting argument that the salesman failed to state a prima facie failure-to-accommodate claim because he did not explain the ceremony sufficiently to his employer; concluding that "[a] sensible approach would require only enough information about an employee’s religious needs to permit the employer to understand the existence of a conflict between the employee's religious needs and the employer’s job requirements”).

. This duty is not unlike the duties of inquiry recognized by the law in other contexts, when facts are sufficient to put a party on notice he needs to make inquiry or be held to know the facts which such inquiry would have uncovered. See TRW Inc. v. Andrews, 534 U.S. 19, 30, 122 S.Ct. 441, 151 L.Ed.2d 339 (2001) (in parenthetical to citation for Stone v. Williams, 970 F.2d 1043, 1049 (2d Cir.1992); addressing when statute of limitations begins to run); see also Sterlin v. Biomune Sys., 154 F.3d 1191, 1201-02 (10th Cir.1998) (addressing when statute of limitations for private securities fraud action began to run).

. Other circuits have noted, in addressing this interactive process in the context of reasonable accommodation under the ADA, that an employer can be liable for refusing to participate in good faith in that process:
[CJourts should look for signs of failure to participate in good faith or failure by one of the parties to help the other party determine what specific accommodations are necessary. A party that obstructs or delays the interactive process is not acting in good faith. A party that fails to communicate, by way of initiation or response, may also be acting in bad faith. In essence, courts should attempt to isolate the cause of the breakdown and then assign responsibility.
Taylor v. Phoenixville Sch. Dist., 184 F.3d 296, 312 (3d Cir.1999) (emphasis added) (quoting Bultemeyer v. Fort Wayne Cmty. Sch., 100 F.3d 1281, 1285 (7th Cir.1996)).

.The facts presented here include the fact that Elauf wore a black hijab to her interview (Aplt.App. at 368), exhibiting the very practice that Abercrombie’s Look Policy was ultimately determined to forbid. Further, Abercrom-bie assumed that Elauf was Muslim, wore the hijab for religious reasons, and would insist on wearing a hijab while working in one of Abercrombie’s stores. {Id. at 306-07; Aple. Supp.App. at 48.) Abercrombie then acted on those assumptions, without first verifying them with Elauf, when it decided not to hire her. (Aple. Supp.App. at 48, 51.) So this is not a case where the employer can claim to have been blindsided by some objectionable practice of the job applicant that the employer did not realize was religiously based.

. All of the above could reasonably be inferred from the record in this case, read in the light most favorable to the EEOC on behalf of Elauf.

. The district court granted the EEOC summary judgment on an alternative basis, holding as a matter of law that Abercrombie had failed to establish that it could not accommodate Elaufs religious practice of wearing a hijab without suffering undue hardship to the conduct of its business. Abercrombie challenges that determination on appeal. Because I conclude there is conflicting evidence as to that issue, as well, I would not affirm the district court’s decision to grant summary judgment for the EEOC on that basis.