**F I L E D**
**United States Court of Appeals**
**Tenth Circuit**

**AUG 1 2003**

**PATRICK FISHER**
**Clerk**

**PUBLISH**

**UNITED STATES COURT OF APPEALS**

**TENTH CIRCUIT**

---

MICHELLE STINNETT,

     Plaintiff - Appellant,

v.

SAFEWAY, INC.,

     Defendant - Appellee.

No. 02-1200

---

**Appeal from the United States District Court**
**for the District of Colorado**
**(D.C. No. 00-S-406)**

---

Submitted on the briefs:   *

John W. McKendree and Elizabeth Kelly, Law Offices of John W. McKendree, Denver, Colorado for the Plaintiff-Appellant.

Gregory A. Eurich and Megan C. Bertron, Holland & Hart, L.L.P., Denver, Colorado for the Defendant-Appellee.

---

Before **SEYMOUR** , **LUCERO** and **HARTZ** , Circuit Judges.

---

* After examining the briefs and appellate record, this panel has determined unanimously that oral argument would not materially assist in the determination of this appeal. See Fed. R. App. P. 34(a)(2); 10th Cir. R. 34.1(G). The case is therefore ordered submitted without oral argument.

**LUCERO** , Circuit Judge.

Michelle Stinnett brought this sex-discrimination suit against her employer, Safeway, Inc. ("Safeway"), alleging disparate treatment and hostile work environment in violation of Title VII, 42 U.S.C. § 2000e et seq., and the Colorado Anti-Discrimination Act, Colo. Rev. Stat. § 24-34-402. The district court granted summary judgment in favor of Safeway. Exercising jurisdiction under 28 U.S.C. § 1291, we reverse in part and affirm in part.

## I

Michelle Stinnett began working for Safeway in December 1989 and was promoted in April 1996 to work as a meat wrapper in the retail stores. In January 1997, she received the opportunity to work as a temporary "project employee" on a data processing assignment. "Project employees" are assigned to work "backstage" temporarily on various assignments when the need arises, and Safeway routinely returns them to their regular retail positions upon completion of their project tasks. Working backstage is not a promotion and project employees receive no increase in pay or benefits by virtue of their assignments. At the time she accepted the data processing assignment, Stinnett understood the temporary nature of the position. She worked in this position for approximately eight months.

When her data processing assignment ended in November 1997, she obtained another assignment to work backstage in the Self-Maintenance Department under Bill Smith, installing checkstand equipment. This project lasted for two days. Between November 1997 and March 1998, she continued to work backstage for Smith on various assignments such as installing checkstand equipment and implementing a videoconferencing system in a number of retail stores. Around March 1998, Smith informed Stinnett that he was running out of work for her and that she would need to return to work at the retail store. At this point, she contacted the Safeway West District Office, which informed her that due to the lack of work for retail meat-wrappers, she would be placed on layoff status unless she could obtain another backstage assignment. When Stinnett informed Smith of this situation, Smith found another position for her in his department. Stinnett was ultimately assigned to perform the duties of another female employee, Renee Ayala, who had recently been promoted to a newly created "watchdog" position. [1]

In her new position, Stinnett assisted field technicians, who worked on store computers, by filling in for them when they were on vacation or experienced an overflow of work. In addition, she assisted in cleaning, repairing, shipping,

_____

[1] Smith also considered Stinnett for the watchdog position, but chose Ayala based on her seniority in the department.

and inventorying equipment, and sometimes answered phones and monitored calls. Because she was working forty hours a week, Stinnett assumed that her new position was permanent and that she would not be returned to her previous retail meat-wrapper position. Around this time, Smith offered Stinnett a permanent position as a Self-Maintenance field technician, but she declined because she did not feel she had adequate experience and she did not wish to relocate to Colorado Springs.

Sometime in November 1998, a male project-employee with less department seniority, Malcolm Groves, was assigned to lead a business project referred to as the "4694 rollout." (Appellant's App. at 168.) Smith rejected Stinnett's requests to be placed on the project, and instead brought another male, Dan Krist, backstage to assist Groves with the 4694 project. At around the same time, Smith informed Stinnett that he no longer needed assistants for field technicians, and Stinnett was returned to her retail position as a meat wrapper. During the entire course of her tenure as a project employee, Stinnett continued to be a member of the retail-clerks bargaining unit, accrue seniority, and earn the same wage that she would have earned in her retail role, as is the policy for all temporary project employees. Consequently, she suffered no loss in salary or benefits upon returning to her retail position.

Stinnett filed a sex-discrimination suit against Safeway in Colorado state court, alleging disparate treatment and hostile work environment in violation of Title VII, 42 U.S.C. § 2000e et seq., and the Colorado Anti-Discrimination Act, Colo. Rev. Stat. § 24-34-402, which was removed to federal district court. Granting Safeway's motion for summary judgment, the district court concluded that Stinnett failed to (1) establish a prima facie case of sex discrimination; (2) produce evidence that Safeway's actions were pretextual; and (3) produce evidence of a hostile work environment. Stinnett appeals this judgment.

## II

We review a grant of summary judgment de novo, applying the same legal standard used by the district court. McCowan v. All Star Maintenance, Inc., 273 F.3d 917, 921 (10th Cir. 2001). If review of "the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, reveals there is no genuine issue as to any material fact, the moving party is entitled to summary judgment as a matter of law." Id. (quotation omitted). "[A]ll inferences arising from the record before us must be drawn and indulged in favor of the party opposing summary judgment." Id. "Credibility determinations, the weighing of the evidence, and the drawing of legitimate inferences from the facts are jury functions, not those of a judge, whether he is ruling on a motion for summary judgment or for a directed verdict." Foster v. AlliedSignal, Inc., 293

F.3d 1187, 1195 (10th Cir. 2002) (quoting Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 255 (1986)). At the summary judgment stage, "our role is simply to determine whether the evidence proffered by plaintiff would be sufficient, if believed by the ultimate factfinder, to sustain her claim." Id.

**A**

Stinnett argues that Safeway's decision to transfer her back to her retail meat-wrapper position constituted disparate treatment in violation of Title VII. Applying the familiar analytical framework mandated by Texas Dep't of Cmty. Affairs v. Burdine, 450 U.S. 248 (1981), and McDonnell Douglas Corp. v. Green, 411 U.S. 792 (1973), the district court concluded that Stinnett failed to satisfy the first step of the inquiry because she could not show an adverse employment action, the only disputed element of her prima facie case. Thus, we must consider whether a required return of an employee from a temporary position to her permanent assignment constitutes an "adverse employment action" subject to Title VII protection.

This is not the first case in which we have considered what constitutes such conduct. In Sanchez v. Denver Public Schools, 164 F.3d 527, 532 (10th Cir. 1998), we explained that the phrase "adverse employment action" is to be liberally defined. "Such actions are not simply limited to monetary losses in the form of wages or benefits. Instead, we take a case-by-case approach, examining

the unique factors relevant to the situation at hand." Id. (citation omitted). Conduct rises to the level of "adverse employment action" when it "constitutes a significant change in employment status, such as hiring, firing, failing to promote, reassignment with significantly different responsibilities, or a decision causing a significant change in benefits." Id. (quoting Burlington Indust., Inc. v. Ellerth, 524 U.S. 742, 761 (1998)); see also Hooks v. Diamond Crystal Specialty Foods, Inc., 997 F.2d 793, 799 (10th Cir. 1993) (noting that a reassignment may be an adverse employment action when the employee "receives less pay, has less responsibility, or is required to utilize a lesser degree of skill than his previous assignment"), overruled on other grounds by Buchanan v. Sherrill, 51 F.3d 227, 229 (10th Cir. 1995). Actions presenting nothing beyond a "mere inconvenience or alteration of responsibilities," however, do not constitute adverse employment action. Sanchez, 164 F.3d at 532 (characterizing the reassignment of a fourth-grade teacher to work as a second-grade teacher at another school as a "purely lateral transfer," and rejecting the teacher's argument that this constitutes an adverse employment action merely because her commute-time increased and no other teachers volunteered for the transfer).

We cannot say on this record that Stinnett's transfer did not result in a significant change in responsibilities—from providing skilled technical assistance to wrapping meat. Although she maintained her wage level, seniority, and title as

meat wrapper throughout the relevant time period, there is evidence that the reassignment resulted in a de facto reduction in responsibility and required a lesser degree of skill. We conclude that Stinnett has submitted sufficient evidence to suggest that she suffered an "adverse employment action." As to the suggestion that the transfer did not constitute such conduct because Stinnett's temporary project had merely lapsed and there was no longer any need for her assistance backstage, this goes to the second and third steps of the McDonnell Douglas inquiry, discussed below, examining Safeway's reason for the transfer, and is not relevant to determining whether the transfer constitutes an adverse employment action.

We do not propose to discourage commendable employee programs of the type Safeway has implemented in this case. We stress that an employer always retains the right to reassign a temporarily assigned employee to a permanent position. We hold merely that reassignment of an employee to a permanent position under circumstances such as those in this case presents a question of fact as to whether an employment action is adverse under McDonnell Douglas. If an adverse employment action is implicated, an employer may not exercise the right of reassignment in a discriminatory manner. See, e.g., Burdine, 450 U.S. at 259 ("[T]he employer has discretion to choose among equally qualified candidates, provided the decision is not based upon unlawful criteria." (emphasis

- 8 -

added)).  Title VII does not diminish employer discretion to promote or not promote employees, for example, nor does it preclude Safeway's discretionary efforts to structure its hiring and assigning practices creatively.  See, e.g., Burdine, 450 U.S. at 259 (holding that Title VII "was not intended to diminish traditional managerial prerogatives") (quotation omitted); Simms v. Okla. ex rel. Dep't of Mental & Subst. Abuse Serv., 165 F.3d 1321, 1330 (10th Cir. 1999) ("Our role is to prevent unlawful hiring practices, not to act as a super personnel department that second guesses employers' business judgments." (quotation omitted)).

Having concluded that Stinnett submitted sufficient evidence to permit a jury to find an adverse employment action, we conclude that Stinnett's disparate treatment claim survives summary judgment at the first step of the McDonnell Douglas inquiry.  Once a plaintiff establishes a prima facie case, the burden of production shifts to the defendant to articulate a facially non-discriminatory reason for its action.  Burdine, 450 U.S. at 253.  "[This] does not require the defendant to explain any differences in treatment between the plaintiff and others. In other words, step two is not a comparative step."  EEOC v. Flasher Co., 986 F.2d 1312, 1318 (10th Cir. 1992).  Safeway's stated reasons for sending Stinnett back to her former retail role are as follows:  (1) backstage project employees are routinely returned to their former retail positions when the project has been

completed, and (2) there was no more work for assistants to field technicians, the role Stinnett performed. As these reasons are facially non-discriminatory, they satisfy Safeway's burden of defending its decision to transfer Stinnett back to her retail position.

Accordingly, the burden shifts back to Stinnett, who must show that Safeway's stated reasons were a pretext for its discriminatory intentions. See Burdine, 450 U.S. at 253; Flasher, 986 F.2d at 1321. "A plaintiff demonstrates pretext by showing either that a discriminatory reason more likely motivated the employer or that the employer's proffered explanation is unworthy of credence." Rea v. Martin Marietta Corp., 29 F.3d 1450, 1455 (10th Cir. 1994) (quotation omitted). In order to affirm the district court's grant of summary judgment to Safeway, we must conclude that Stinnett has "failed to produce any evidence from which a reasonable inference could be drawn" that Safeway's proffered reasons were pretextual. Foster, 293 F.3d at 1196.

Stinnett argues that Safeway's justification for the transfer—that it had run out of work for her to perform—is belied by its decision to hire more employees to work in her department after she was transferred. Although Safeway insists that none of these new employees performed Stinnett's specific duties of assisting field technicians, Stinnett argues that her backstage duties encompassed other tasks such as answering phones and inventorying equipment. These allegations

- 10 -

are supported by Paula Martinez's affidavit, in which Martinez asserts that "the demand for [Stinnett's] services . . . had not diminished. Since [Stinnett's] departure there [had] been several males pulled out of stores to help the field technicians." (Appellant's App. at 182.) Moreover, there was work available to lead and assist in the 4694 rollout, but those assignments went to male employees Malcolm Groves and Dan Krist, both of whom had less department experience than Stinnett. This evidence suggests that Safeway's stated reason for the transfer—that it had run out of work for Stinnett to perform—is unworthy of credence.

As additional evidence to support the inference of discriminatory intent, Stinnett claims that in a practice not applied to men, Safeway sent women in her department to remote areas on-call and required them to clean at night underneath checkstands. Stinnett also claims that Safeway disparately provided males with additional training. Contrary to the district court's conclusion, these allegations, if believed, provide circumstantial evidence from which a fact finder might derive an inference of discriminatory intent. Accordingly, we reverse the district court's grant of summary judgment in favor of Safeway on the disparate treatment claim.

**B**

We next consider the hostile work environment claim. In order to survive summary judgment on this claim, Stinnett must "show that a rational jury could find that the workplace is permeated with discriminatory intimidation, ridicule, and insult, that is sufficiently severe or pervasive to alter the conditions of the victim's employment and create an abusive working environment." Davis v. U.S. Postal Serv., 142 F.3d 1334, 1341 (10th Cir. 1998) (quotation omitted). "Whether an environment is hostile or abusive can be determined only by looking at all the circumstances including the frequency of the discriminatory conduct; its severity; whether it is physically threatening or humiliating, or a mere offensive utterance; and whether it unreasonably interferes with an employee's work performance." Id. (quotation omitted). "[A] sexually objectionable environment must be both objectively and subjectively offensive, one that a reasonable person would find hostile or abusive, and one that the victim in fact did perceive to be so." Faragher v. City of Boca Raton, 524 U.S. 775, 786 (1998).

In support of this claim, Stinnett reiterates her allegations that female employees were subject to more onerous working conditions than their male counterparts. In particular, she claims that only female employees were required to clean underneath checkstands and serve on-call to remote locations. In addition, she maintains that males obtained extra training. This evidence, in and

- 12 -

of itself, fails to create a material dispute as to whether Safeway was permeated with the "discriminatory intimidation, ridicule, and insult" sufficient to establish an abusive working environment. Davis, 142 F.3d at 1341 (quotation omitted). Accordingly, we affirm the district court's grant of summary judgment in favor of Safeway on the hostile work environment claim.

## C

Colorado has adopted the same standards applicable to Title VII cases when considering claims brought under the Colorado Anti-Discrimination Act. Colo. Civil Rights Comm'n v. Big O Tires, Inc., 940 P.2d 397, 400–01 (Colo. 1997). Because we hold that Stinnett satisfied her burden to survive summary judgment on the disparate treatment claim under Title VII, we hold that she has done so for her state-law disparate treatment claim as well. As to her state-law hostile work environment claim, we affirm the district court's grant of summary judgment in favor of Safeway in light of our conclusion that Stinnett has not satisfied her burden to state a hostile work environment claim under Title VII.

## III

For the reasons set forth above, we **REVERSE** the judgment of the district court granting summary judgment in favor of Safeway on the disparate treatment claims under Title VII and state law, and **AFFIRM** the district court's dismissal

of the hostile work environment claims.  The case is  **REMANDED**  for further proceedings consistent with this opinion.