MARTÍNEZ, District Judge,
joining in part and dissenting in part.
In my view, there are present in this case genuine issues of material fact which preclude summary adjudication of Plaintiffs Rehabilitation Act claim in favor of Defendants-Appellees Putnam City School District No. 1 (the “District”) and Principal Lee Roland (“Mr. Roland”). There are also disputed material facts on the record before us which prevent entry of summary judgment in favor of all Defendants on Ms. Duvall’s First Amendment claim. Accordingly, I join the majority in affirming the district court’s judgment in favor of Assistant Principal Marjorie Iven (“Ms. Iven”) on Ms. Duvall’s Rehabilitation Act claim. With regard to the remainder of the majority’s opinion and judgment, I respectfully dissent.
I.
As her initial claim, Plaintiff-Appellant Louise Duvall asserts that she was subjected to unlawful retaliation on the part of Defendants, in violation of § 504 of the Rehabilitation Act, 29 U.S.C. § 794 (the “Act”). Ms. Duvall points to two employment actions which she argues were materially adverse to her and in violation of the Act: (1) the letter of admonishment she received from Ms. Iven on October 25, 2007; and (2) her reassignment to a general education first grade position by Mr. Roland. I concur with my colleagues’ determination that the subject letter of admonishment did not on these facts constitute an adverse action, because the letter did not affect Ms. Duvall’s work conditions or materially affect her employment. I also agree that it necessarily follows that the district court properly granted summary judgment in favor of Defendant-Ap-pellee Marjorie Iven, because Ms. Duvall has not identified any other allegedly adverse action that can be attributed to Ms. Iven. Manifestly, therefore, Ms. Duvall has failed to make out a prima facie claim of retaliation under the Act as against Ms. Iven.
I also agree with the majority’s conclusion that Ms. Duvall’s involuntary reassignment to a lower paying, regular (non-special) education, first grade teaching position did constitute an adverse employment action under the Act. Given our prior decisions holding that involuntary transfers of employees which result in a loss of compensation constitute adverse employment actions under federal anti-discrimination statutes, we could hardly have concluded otherwise. See, e.g., Stinnett v. Safeway, Inc., 337 F.3d 1213, 1217 (10th Cir.2003) (involuntary transfer was an adverse employment action under Title VII despite identical wages, seniority and title, because evidence showed that “the reassignment resulted in a de facto reduction in responsibility and required a lesser degree of skill”); James v. Sears, Roebuck & Co., Inc., 21 F.3d 989, 993 (10th Cir.1994) *817 (although job reassignment is generally not a demotion constituting an adverse employment action under the ADEA, “a reassignment may involve a demotion if the employee will be paid less in the new position”).
I fully agree, moreover, with the majority’s determination that, with regard to the involuntary transfer of Ms. Duvall, she has made out a prima facie case of retaliation under the Act as to Mr. Roland and the District. As they were required to do in these circumstances, Mr. Roland and the District have proffered what they assert was their legitimate, nonretaliatory reason for Mr. Roland’s reassignment of Ms. Du-vall — that he “believed she would be happier and more comfortable in [a first grade] position and that such a move would greatly benefit her, her students, and the school.” R. at 475.
Our prior decisions make clear that “[t]o establish a genuine issue of material fact as to pretext, [Ms. Duvall] must demonstrate that [Mr. Roland’s and the District’s] ‘proffered non-discriminatory reason is unworthy of belief.’ ” Reinhardt v. Albuquerque Pub. Sch. Bd. of Educ., 595 F.3d 1126, 1134 (10th Cir.2010) (quoting Pinkerton v. Colo. Dep’t of Transp., 563 F.3d 1052, 1065 (10th Cir.2009)). As the majority points out, Ms. Duvall “can meet this standard by producing evidence of such weaknesses, implausibilities, inconsistencies, incoherencies, or contradictions in the employer’s proffered legitimate reasons for its action that a reasonable fact-finder could rationally find them unworthy of credence and hence infer that the employer did not act for the asserted nondiscriminatory reasons.” Id. (quoting Pinkerton, 563 F.3d at 1065) (internal quotation marks omitted). Among other things, in evaluating whether the employer’s asserted rationale was or was not a pretext for discrimination, we need to consider whether the employer “honestly believed those reasons and acted in good faith upon those beliefs.” Bullington v. United Air Lines, Inc., 186 F.3d 1301, 1318 (10th Cir.1999), abrogated on other grounds as recognized in Boyer v. Cordant Tech., Inc., 316 F.3d 1137, 1140 (10th Cir.2003).
I disagree with the majority’s determination that Ms. Duvall has failed to come forward with evidence sufficient to create a material dispute on the question of whether the District’s proffered reasons for its decision to reassign her were pretextual. With regard to the primary reason the Defendants say they transferred Ms. Du-vall — that she would have been “happier” teaching first grade — Plaintiff has pointed to credible, material evidence in the record which directly calls into question the plausibility and believability of this rationale.
In the first instance, in order to accept this particular explanation as the District’s non-discriminatory reason for its transfer decision, one would have to believe that Ms. Duvall eagerly anticipated not only being transferred away from special education — the field to which she had dedicated her entire professional career — but also that she welcomed reassignment to a position that paid her appreciably less compensation.
The majority posits that this explanation is indeed entirely credible, given that Ms. Duvall supposedly testified at her deposition that she was unhappy in her current position — with the implication therefore being that she would (or should) have been “happy” with a reassignment to a lower-paying first grade teaching position. A careful review of Ms. Duvall’s deposition testimony reveals, however, that she in fact never testified that she was unhappy in her position. Ms. Duvall’s testimony is actually quite different: she stated under oath that her unhappiness was not with *818 her job (which she had held for 29 years, and had previously provided her with a great sense of professional pride and satisfaction), but with the fact that she believed her “children [we]re not being properly served” and that she had been forced to work in “conditions ... that I believed to beiUegal.” R. 6-20.
With this clarification it is clear that what would have made Ms. Duvall “happy” was for Defendants to have rectified the sources of her complaints — and not, as the District and Mr. Roland argue, for Defendants to involuntarily reassign her to a position with lower compensation and outside her field of professional concentration. From this perspective, moreover, not only does the District’s and Mr. Roland’s proffered rationale become less reasonable, in my judgment it lands squarely in the realm of implausibility and incoherency. In my view these competing views of Defendants’ alleged rationale for the involuntary transfer of Ms. Duvall — as reasonable or implausible — can only be resolved by the trier of fact, after an opportunity to assess the credibility and demeanor of the witnesses with personal knowledge of the key events in question.
The majority relies heavily on our statement in Bullington, 186 F.3d at 1318, that when evaluating pretext, the relevant inquiry is not whether the employer’s proffered reasons were wise, fair or correct, but whether the employer “honestly believed those reasons and acted in good faith upon those beliefs.” In my view this question necessarily incorporates a test of reasonableness. See Reinhardt, 595 F.3d at 1134 (plaintiff can demonstrate pretext by showing weaknesses and implausibilities in the proffered non-discriminatory reasons such that a “reasonable factfinder” could find them “unworthy of credence”); Young v. Dillon Cos., Inc., 468 F.3d 1243, 1250 (10th Cir.2006) (plaintiff can demonstrate pretext if “the employer’s explanation was so weak, implausible, inconsistent or incoherent that a reasonable fact finder could conclude that it was not an honestly held belief but rather was subterfuge for discrimination”); Stover v. Martinez, 382 F.3d 1064, 1076 (10th Cir.2004) (plaintiff can demonstrate pretext by showing that the proffered non-discriminatory reason was so incoherent and implausible as to be “unworthy of belief’ in the eyes of a “rational factfinder”).
Surely the trier of fact should be given the opportunity to assess the credibility of an employer who “honestly believes” a non-discriminatory rationale which is unreasonable. For instance, a trier of fact might legitimately question whether it would be reasonable and plausible for an employer in a race-based wage claim case to “honestly believe” that its African-American employees desired to be paid less than their similarly-situated Anglo colleagues.
There is, moreover, additional evidence in the record which buttresses my conclusion that it was unreasonable for Defendants to honestly believe that Ms. Duvall was happy about the transfer Mr. Roland was contemplating for her. For example, it appears that on April 28, 2008, Mr. Roland first broached with Plaintiff the subject of her being transferred to one of two then-available regular education positions. R. at 1113. The next day, in an email message to Glen Kastner, the District’s Executive Director of Special Services, Ms. Duvall unequivocally stated that she had informed Mr. Roland “that I was not prepared to lose my 5% Special Ed. money.” Id. Ms. Duvall went on in this email to solicit of Mr. Kastner his assistance in locating for her “a good fit for my talents[,]” in a position clearly other than the two regular education positions Mr. Roland was then considering. Id.
*819 Ms. Duvall also made clear her lack of acquiescence with the transfer Mr. Roland was considering for her by personally taking the initiative of seeking an entirely different type of transfer — to another special education position within the District. On the same day Plaintiff met with Mr. Roland to discuss his possible plans to transfer her to a regular education position, Ms. Duvall separately applied for a voluntary transfer of her choosing — to “any elementary or middle school special education Resource or Inclusion program.” R. at 1647 (emphasis added). Given this sequence of events, I submit it was unreasonable for Defendants to believe that Ms. Duvall was happy about the prospect of being transferred to a regular education position — when all along she was attempting to prevent that very result by seeking a transfer to another special education position within the District. This evidence casts doubt on the plausibility of Defendants’ proffered rationale and buttresses Plaintiffs contention that she never sought or agreed to the involuntary transfer imposed upon her by Defendants.
Here, to summarily adjudicate Ms. Du-vall’s claim under the Act, we have to conclude that she eagerly desired and welcomed an opportunity to work for less pay, in a position she not only never sought, but one also far afield from her special education expertise — a skill set and knowledge base she had developed through many years of dedicated experience. In my view, for the district court to determine, solely on the papers before it and without a searching trial by jury, that it was reasonable and plausible for the District and Mr. Roland to “honestly believe” that Ms. Duvall sought such a result, was error. I would reverse the entry of judgment in favor of the District and Mr. Roland on Ms. Duvall’s retaliation claim under the Act.[1]
II.
I turn next to Ms. Duvall’s claim that Defendants retaliated against her in violation of the First Amendment. It is now well-settled in this Circuit that, when determining whether Defendants impermissi-bly retaliated against Ms. Duvall in violation of her First Amendment rights, we apply the test from Pickering v. Board of Education, 391 U.S. 563, 568, 88 S.Ct. 1731, 20 L.Ed.2d 811 (1968), and Connick v. Myers, 461 U.S. 138, 147, 103 S.Ct. 1684, 75 L.Ed.2d 708 (1983). As more fully detailed by the majority, this test, which has come to be referred to in the case law as the “Garcetti/Pickering analysis,” has five prongs. As we have previously recognized, typically, “[t]he first three ‘prongs’ are said to be issues of law to be decided by the court; the last two are factual *820 issues to be decided by the fact finder.” Dixon v. Kirkpatrick, 553 F.3d 1294, 1302 (10th Cir.2009).
I concur with the majority’s conclusion that “Ms. Duvall has arguably satisfied the first prong of the Garcetti/'Pickering test with regard to her communications to the State Department of Education (the “Department”), as these communications were to individuals outside her chain of command and went beyond the scope of her official job duties.” Where I part ways with my colleagues is in regards to their conclusion that even if Ms. Duvall’s First Amendment claim survives the first three steps of the Garcetti/Pickering analysis, it would nonetheless fail at the fourth step because of lack of evidence of causation.[2]
As applied to the facts of this case, under the fourth prong of the Garcet-ti/Pickering test, Ms. Duvall has the burden of establishing that her communications to the Department were a substantial motivating factor in Defendants’ decision to involuntarily transfer her to a regular first grade teacher position. Couch v. Bd. of Trs. of Mem’l Hosp., 587 F.3d 1223, 1236 (10th Cir.2009). “An employer’s knowledge of the protected speech, together with close temporal proximity between the speech and challenged action, may be sufficiently probative of causation to withstand summary judgment.” Maestas v. Segura, 416 F.3d 1182, 1189 (10th Cir.2005) (internal quotation marks omitted). “Other evidence of causation may include evidence the employer expressed opposition to the employee’s speech or evidence the speech implicated the employer in serious misconduct or wrongdoing.” Id., 416 F.3d at 1189.
I respectfully disagree with the majority’s determination that Ms. Duvall has failed to produce any evidence that Defendants were aware of her communications with the Department regarding her views on the subject of the District’s new “full inclusion” teaching model. As the majority itself concedes, Defendants knew Ms. Duvall had “consulted with the State Department of Education Personnel.” R. at 882. The majority grounds its finding of a lack of causation on its conclusion that there is no evidence in the record before us concerning the content of these communications. But the record does not bear this out.
In a rebuttal letter dated November 2, 2007 and addressed to Assistant Principal Iven, Ms. Duvall outlined her reasons for rejecting the assertions contained in Ms. Iven’s Letter of Admonishment. R. at 1641^42. In specific response to Item No. 2 set forth in the October 25, 2007 admonishment letter [R. at 550], Ms. Duvall expressly stated the following:
I have consulted with State Department of Education Personnel and have studied the directives in the Policy and Procedures Manual for Special Education in Oklahoma, (Unofficial Draft Copy 2007). Both sources provided the direction I followed in writing my Letter of Dissent.
R. at 1641, emphasis added.
Ms. Duvall’s “Letter of Dissent” was the October 3, 2007 letter she authored and addressed to Special Services Executive Director Kastner. R. at 1632. In that correspondence, Ms. Duvall explained to Mr. Kastner that her Assistant Principal had changed her special education teaching assignments from the pull-out services model to the full inclusion model. Id. Most importantly for our purposes here, in *821 this letter Ms. Duvall also made clear to the District’s Executive Director that she was requesting written confirmation from Mr. Kastner that the District’s new special education teaching model was not “breaking any state or federal guidelines.” Id.
Defendants do not deny they received and were aware of both the October 3, 2007 and November 2, 2007 letters written to the District by Ms. Duvall. When read together, these two letters establish that prior to Ms. Duvall’s involuntary transfer, the Defendants were privy to at least the following information: (a) Ms. Duvall had consulted with the Department; (b) someone(s) in the Department provided Ms. Duvall with “the direction[s]” she followed when she prepared her “Letter of Dissent;” and (c) Ms. Duvall’s “Letter of Dissent” raised the issue of a possible violation of federal or state law as a result of the District’s adoption of the new “full inclusion” model for its special education classrooms. R. at 1632 & 1641.
At a minimum, therefore, there is at least a genuine issue of material fact in regards to whether Ms. Duvall communicated her views on the full inclusion model to the Department, as well as whether such communications and their content were known to Defendants before they took their adverse employment action against Plaintiff. I conclude that a trier of fact might very well find, on these facts, that Ms. Duvall’s statements to the Department were a motivating factor in the Defendants’ subsequent decision to involuntarily transfer her. As a consequence, in my judgment it was error for the district court to determine that Ms. Duvall failed to establish causation under the fourth prong of the Garcetti/PicJcering test. I would accordingly reverse the district court’s grant of summary judgment to Defendants on Plaintiffs First Amendment claim.
III.
Given my conclusion that the district court’s grant of summary judgment in favor of Ms. Ivan and Mr. Roland on Ms. Duvall’s First Amendment claim was in error, the individual Defendants’ alternative argument that they are entitled to qualified immunity would need to be addressed. As a consequence, I would reverse the district court’s judgment on Ms. Duvall’s First Amendment claim, and remand with instructions that the district court determine in the first instance whether Ms. Iven and/or Mr. Roland are immune from liability on the constitutional claim. Murphree v. U.S. Bank Of Utah, N.A., 293 F.3d 1220, 1223 (10th Cir.2002) (where trial judge did not consider the issue of qualified immunity, the district court must evaluate it on remand); England v. Hendricks, 880 F.2d 281, 285 (10th Cir.1989) (“It does not appear on the record before us whether the trial judge considered the issue of qualified immunity, and the issue is not presently before us. We will remand to the district court for a determination of qualified immunity.”).

. The majority briefly notes that in its view the District had multiple legitimate reasons for transferring Ms. Duvall, only one of which was Plaintiff's “happiness” over her involuntary transfer. From my reading of the parties’ briefing on this issue, however, it is clear that Ms. Duvall’s alleged delight in being transferred to a lesser-paying position is the central non-discriminatory rationale advanced by Defendants for effecting this employment action. We have previously recognized that where one allegedly pretextual rationale predominates over other reasons proffered by a Defendant for its conduct, a jury could reasonably find that the employer lacked credibility with regard to its remaining reasons, and as a consequence appropriately deny summary judgment. Bryant v. Farmers Ins. Exch., 432 F.3d 1114, 1127 (10th Cir.2005) ("It is not simply a question of how many of the defendant’s reasons a plaintiff has refuted, but rather a question of whether casting doubt on a particular justification necessarily calls into doubt the other justifications. Where, as here, one of the stated reasons for termination predominates over the others, demonstrating that reason to be pretextual is enough to avoid summary judgment.”) (internal citation omitted).

. As did the majority, I, too, limit my analysis to the first and fourth prongs of the Garcet-ti/Pickering test.