**FILED**
**United States Court of Appeals**
**Tenth Circuit**

**July 2, 2024**

**Christopher M. Wolpert**
**Clerk of Court**

UNITED STATES COURT OF APPEALS

FOR THE TENTH CIRCUIT
_____

HEATHER SPAGNOLIA,

    Plaintiff - Appellant,

v.

CHARTER COMMUNICATIONS, LLC,

    Defendant - Appellee.

------------------------------

COLORADO PLAINTIFF
EMPLOYMENT LAWYERS
ASSOCIATION,

    Amicus Curiae.

No. 23-1190
(D.C. No. 1:21-CV-01787-KLM)
(D. Colo.)

_____

ORDER AND JUDGMENT[*]
_____

Before **TYMKOVICH**, **EBEL**, and **ROSSMAN**, Circuit Judges.
_____

Heather Spagnolia sued her former employer, Charter Communications, under

the Colorado Anti-Discrimination Act (CADA) alleging that she was fired in

retaliation for making reasonable requests for lactation accommodation.  At the close

of discovery, the district court granted summary judgment in favor of Charter.

---

[*] This order and judgment is not binding precedent, except under the doctrines
of law of the case, res judicata, and collateral estoppel.  It may be cited, however, for
its persuasive value consistent with Fed. R. App. P. 32.1 and 10th Cir. R. 32.1.

We affirm.  We agree with the district court that no reasonable juror could conclude, based on the record at summary judgment, that Charter Communications fired Ms. Spagnolia in retaliation for her accommodation request.  Charter offered a legitimate and non-discriminatory reason for firing Ms. Spagnolia—her violation of Charter's policy against surreptitious recordings—and Ms. Spagnolia failed to show that this was pretext.

## I.  Background

Ms. Spagnolia began her employment with Charter in 2016.  She moved to Colorado in 2017 to work as a Regional Operations Center Specialist in the Denver area.

From April to July 2019, Ms. Spagnolia took leave under the Federal Medical Leave Act to give birth to her second child.  Like many mothers of newborns, Ms. Spagnolia needed to pump breast milk.  Her supervisor, Chris Williams, told her that she could use the office Wellness Room when she needed to pump.  She was allowed to pump on company time.  Since the Wellness Room was temporarily unavailable because of construction, Ms. Spagnolia pumped in a bathroom.  After Ms. Spagnolia objected to this venue, a different supervisor, Brian Tritz, suggested she pump in the locker room, and offered her his key card.  Although Charter had a women's locker room, Ms. Spagnolia felt uncomfortable in that location since it was accessible with a man's key card.

With no satisfactory pumping location, Ms. Spagnolia emailed Mr. Tritz to ask for a sustainable solution.  Her email, sent on July 11, included a link to a Colorado

state government website that listed lactation accommodations required under Colorado and federal law. Mr. Tritz directed her to use a vacant office, a solution that Ms. Spagnolia found unsatisfactory since silhouettes were visible through its frosted glass windows. Soon after, construction on the Wellness Room concluded. Ms. Spagnolia did not find that room ideal, since it doubled as a break room, but she used it for several weeks.

On August 22, 2019—almost two months after Ms. Spagnolia returned to the office—Charter changed its policy on lactation breaks and began requiring Ms. Spagnolia to "clock out" before taking a break. Charter's nationwide policy did not require lactation breaks to be paid, nor did any federal or state regulation. This policy change was important because Ms. Spagnolia's lactation breaks lasted for an average of two hours per day, and sometimes up to three hours—in addition to her lunch break and regular paid breaks.

The following day, Ms. Spagnolia met with Mr. Tritz to discuss the change in policy. She surreptitiously recorded the meeting. Charter later discovered that she had done so and terminated her on August 29 for violating internal policies prohibiting surreptitious recordings of meetings.

Ms. Spagnolia sued Charter alleging (1) pregnancy discrimination, (2) gender discrimination, (3) failure to accommodate, (4) retaliation, and (5) termination in violation of public policy. The first four claims were brought pursuant to the CADA. The district court granted summary judgment to Charter on all five claims.

3

Ms. Spagnolia appeals the district court's grant of summary judgment on her claim of retaliation for requesting reasonable accommodations for lactation.

## II. Analysis

Ms. Spagnolia contends that the district court erred by concluding that the CADA does not require lactation accommodations. But whether that is true or not, Ms. Spagnolia has not shown that Charter's proffered reason for dismissing her was pretextual.

Summary judgment is proper if a party shows that "there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). "In applying this standard, we view the facts and any reasonable inferences in the light most favorable to the non-moving party." *Arnold v. City of Olathe*, 35 F.4th 778, 788 (10th Cir. 2022). "We review the district court's grant of summary judgment de novo, applying the same standards that the district court should have applied." *Hickey v. Brennan*, 969 F.3d 1113, 1118 (10th Cir. 2020) (citing *Tesone v. Empire Mktg. Strategies*, 942 F.3d 979, 994 (10th Cir. 2019)).

The CADA forbids employers from "discriminat[ing] against any person because such person has opposed any practice made a discriminatory or an unfair employment practice by this part." It protects a number of characteristics, including "disability, race, creed, color, sex, sexual orientation, gender identity, gender expression, marital status, religion, age, national origin, [and] ancestry." C.R.S. § 24-34-402(1)(a). It requires employers to make a range of accommodations to their employees, and it protects employees who complain about an employer's non-

4

compliance.  C.R.S. § 24-34-402(1)(e)(IV).  Importantly, in considering CADA claims, Colorado applies "the same standards applicable to Title VII cases." *Stinnett v. Safeway, Inc.*, 337 F.3d 1213, 1219 (10th Cir. 2003) (citing *Colo. Civil Rights Comm'n v. Big O Tires, Inc.,* 940 P.2d 397, 400–01 (Colo.1997)).  In other words, the Title VII *McDonnell-Douglas* burden-shifting framework applies to such claims. *See McDonnell Douglas Corp. v. Green*, 411 U.S. 792, 802 (1973).

To establish a prima facie case of retaliation under that framework, Ms. Spagnolia must show (1) engagement in protected activity; (2) a "materially adverse" employment action; and (3) a causal connection between the protected activity and the adverse action.  *Singh v. Cordle*, 936 F.3d 1022, 1042 (10th Cir. 2019).  If she establishes a prima facie case, the burden then shifts to Charter to produce a legitimate, non-discriminatory reason for the adverse employment action.  *Hiatt v. Colo. Seminary*, 858 F.3d 1307, 1316 (10th Cir. 2017).  If Charter does so, the burden shifts back to Ms. Spagnolia to establish that its proffered reason was pretextual.  *Id.*

Ms. Spagnolia argues that she engaged in protected activity under the CADA by emailing her supervisors to ask for lactation accommodations; that Charter's dismissal constitutes a materially adverse employment action; and that Charter fired her in retaliation for her email.  She notes that her supervisors emailed HR a day before the change in clocking-out policy to voice frustration with her lactating, which

5

suggests that her behavior had begun to grate on the company.[1]  Charter points to Ms. Spagnolia's surreptitious recording as a legitimate, non-discriminatory reason for the adverse employment action.  Charter contends that it fired Ms. Spagnolia for violating its policy on surreptitious recordings, rather than for sending an email about lactation accommodations.

Ms. Spagnolia argues that Charter's stated reason for dismissing her—her surreptitious recording of her colleague—was pretextual.  "A plaintiff demonstrates pretext by showing either that a discriminatory reason more likely motivated the employer or that the employer's proffered explanation is unworthy of credence." *Stinnett*, 337 F.3d at 1218.  Ms. Spagnolia may "show pretext 'by demonstrating such weaknesses, implausibilities, inconsistencies, incoherencies, or contradictions in the

---

[1] It is unclear that the CADA requires accommodations for nursing mothers.  The CADA requires accommodations "for health conditions related to pregnancy or the physical recovery from childbirth."  C.R.S. § 24-34-402.3(1)(a)(I).  The statute does not mention nursing mothers, and it is unclear from the statutory language that nursing is a "health condition related to pregnancy or the physical recovery from childbirth."  Colorado has a separate statute, the Workplace Accommodations for Nursing Mothers Act, which expressly applies to nursing mothers.  C.R.S. § 8-13.5-101, et seq.  The Colorado Supreme Court has yet to address whether the CADA requires lactation accommodations and how the two statutes interact with each other.  Ms. Spagnolia urges us to certify this question to the Colorado Supreme Court.  We decline to do so, or even to resolve this question.  "Under our own federal jurisprudence, we will not trouble our sister state courts every time an arguably unsettled question of state law comes across our desks."  *Pino v. United States*, 507 F.3d 1233, 1236 (10th Cir. 2007) (Gorsuch, J.).  Certification is appropriate, however, if an issue "may be determinative of the case at hand."  *Id.*  Even assuming Ms. Spagnolia has established a prima facie case for accommodation under the CADA, she still cannot prevail because she has not established that Charter's stated reason for dismissing her was pretextual.

employer's proffered legitimate reasons for its action that a reasonable factfinder could rationally find them unworthy of credence and hence infer that the employer did not act for the asserted nondiscriminatory reasons." *Luster v. Vilsack*, 667 F.3d 1089, 1092 (10th Cir. 2011) (quoting *Swackhammer v. Sprint/United Mgmt. Co.*, 493 U.S. 1160, 1167 (10th Cir. 2007)).  In considering an allegation of pretext, "[t]he relevant inquiry is not whether the employer's proffered reasons were wise, fair or correct, but whether it honestly believed those reasons and acted in good faith upon those beliefs." *Id.*  "Mere conjecture that the employer's explanation is pretext is insufficient basis to defeat summary judgment." *Jencks v. Modern Woodmen of Am.*, 479 F.3d 1261, 1267 (10th Cir. 2007).  The central inquiry is "whether a reasonable factfinder could rationally find the employer's rationale unworthy of credence and hence infer that the employer did not act for the asserted non-retaliatory reasons." *Lounds v. Lincare, Inc.*, 812 F.3d 1208, 1234 (10th Cir. 2015).

Ms. Spagnolia raises three arguments to show that Charter's rationale for firing her was pretextual.  None can overcome summary judgment.

*First*, Ms. Spagnolia argues that Charter's proffered explanation for firing her—that she recorded an employee in violation of corporate policies—is implausible because Charter maintained a policy against firing workers for a first offense of recording a coworker.  The record does not support Ms. Spagnolia's contention that such a policy existed.

Ms. Spagnolia relies on the testimony of Linda Williams, Charter's corporate representative.  In a deposition, Ms. Williams was asked "if that was the first time

7

she'd recorded an employee, would she have been fired?" Aplt. App. Vol. 1 at 204. Ms. Williams answered "No. If she did not repeat the offense, it would have been null and void . . . If she only did it one time—and she didn't do it again, she would have been coached and it would have been over." *Id.* Ms. Spagnolia points to this answer as evidence of a policy against firing employees for a first recording offense. She glosses over, however, the next question at the deposition: whether, according to that logic, Ms. Spagnolia should have been coached rather than fired. Ms. Williams answered "[y]es. However, she had been coached the year before." *Id.*

Reading these two answers together, Ms. Williams's testimony shows that Charter does not generally dismiss employees for a first recording offense, except if they had been coached against the prohibited conduct. Anticipating this problem, Ms. Spagnolia argues that she had not been coached on Charter's *recording* policy. She points to an affidavit by her former supervisor stating that he had coached her on displaying frustration with a coworker. But the affidavit proves the opposite. According to his affidavit, the supervisor informed his subordinates at a meeting attended by Ms. Spagnolia that "Charter's policies prohibited recording other employees at work." *Id.* at 78. Ms. Spagnolia expressed frustration against one of her coworkers at this meeting, which prompted a one-on-one meeting with her supervisor at which he "again told her that no one, including Ms. Spagnolia, should be recording other employees at work." *Id.* at 79.

No reasonable juror could infer from Ms. Williams's testimony that Charter maintained a blanket policy against dismissing employees for a first recording

8

offense, even if they had been previously coached on that offense. And no reasonable juror could infer from the supervisor's affidavit that he had not coached Ms. Spagnolia on recording coworkers.

*Second*, Ms. Spagnolia argues that since Charter did not dismiss another employee who had recorded a coworker, its stated basis for dismissing her was insincere. Ms. Spagnolia points to Charter's failure to dismiss a coworker who allegedly recorded one of his colleagues in 2018. We agree with the district court's assessment that the events were too dissimilar to infer double standards. While our precedents permit parties to show pretext by analogy to a defendant's dissimilar treatment of other employees, our requirements are demanding—and Ms. Spagnolia does not satisfy them. "A plaintiff can show differential treatment by providing evidence the employer treated the plaintiff differently from other similarly situated employees." *Hiatt*, 858 F.3d at 1318. "An employee is similarly situated to the plaintiff if the employee shares the same supervisor, is subject to the same standards governing performance evaluation and discipline, and has similar relevant employment circumstances, such as work history." *Id.* While the record suggests that the other employee shared the same supervisor as Ms. Spagnolia and was subject to the same standards governing performance evaluation, it is silent as to similarity of their employment circumstances. Further, we agree with the district court's assessment that the prior recording was meaningfully different since it did not capture a private conversation and since the record did not reflect that Ms. Spagnolia's colleague had been coached on the recording policy. Order at 47.

9

*Finally*, Ms. Spagnolia argues that Charter's basis for dismissing her was pretextual because it had no formal policy forbidding her from recording coworkers. Ms. Spagnolia points to (1) evidence that Charter's HR executives had difficulty locating its recording policy, suggesting that it did not exist, (2) evidence that the record for Ms. Spagnolia's termination was revised to remove reference to a specific prohibition on recordings, and (3) Charter's assertion in the district court that it fired her for "dishonest and disloyal conduct." Aplt. Br. at 46–47. But Charter's "Legal Connection" publication, distributed quarterly to HR executives, states that "it is not appropriate for . . . any employee to record conversations in the workplace—the conduct is prohibited by the Company." Aplt. App. Vol. 1 at 132. And this type of conduct would consistently be considered unprofessional or dishonest. Moreover, the record shows Charter enforced the policy against at least four other employees prior to Ms. Spagnolia's termination. *Id.* at 92, 95, and 146. Ms. Spagnolia notes that two of those employees committed the violation in states that required two-party consent for recording, and the other had more egregious accompanying conduct. But even so, Charter's company policy is an independent basis for termination.

## III.  Conclusion

Ms. Spagnolia has not mustered evidence to show that Charter's stated basis for dismissing her was pretextual. We therefore affirm the district court's entry of

summary judgment in favor of Charter and deny Ms. Spagnolia's motion to certify questions of law to the Colorado Supreme Court.

Entered for the Court

Timothy M. Tymkovich
Circuit Judge